WILLIAM R. CASTLE, A TAXPAYER OF THE TERRI-
TORY, ON HIS OWN BEHALF AND ON BEHALF
OF ALL AND SINGULAR THE TAXPAYERS OF
SAID TERRITORY, AND AN OWNER OF BONDS
OF SAID TERRITORY, v. A. L. C. ATKINSON, SEC-
RETARY OF THE TERRITORY.

SUBMISSION ON AGREED FACTS.

ARGUED MAY 27, 29, 31, 1905.        DECIDED JUNE 2, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

EQUITY JURISDICTION—*at suit of taxpayer to enjoin expenditure of public moneys under unconstitutional statute.*

Equity has jurisdiction at the suit of a taxpayer to enjoin an executive officer from expending public moneys in pursuance of

an unconstitutional statute, although not to determine political rights not affecting rights of property.

COUNTY ACT—*validity as affected by grounds presented.* .

Neither act 39, as amended by act 54 of the Laws of 1905, known as the County Act, nor act 93 of said Laws relating to the payment of county expenses, is invalid or unconstitutional in the sense that it is unauthorized or prohibited by the Organic Act of the Territory upon any of the grounds presented in this case.          .

OPINION OF THE COURT BY HARTWELL, J.

The case is presented in order to obtain a determination of the plaintiff's right, which he claims, that he is entitled upon the agreed facts to an injunction restraining and enjoining the secretary of the Territory from taking any further proceedings or steps in the matter of the first election for county officers required by the County Act to be held June 20, 1905, and from expending any of the Territorial revenues or money in connection therewith.

The plaintiff claims that for certain specified reasons the Act is unconstitutional and void, and that as a citizen of the United States and of the Territory of Hawaii, a resident of Honolulu, a taxpayer and a holder of Territorial bonds "he has a legal right by a proper bill in equity to apply to a circuit judge of the first judicial circuit of said Territory for an injunction restraining the sai dsecretary from the expenditure of money in the Territorial treasury for and in connection with the special election directed by said County Act." The grounds on which the plaintiff claims that the Act is unconstitutional may thus be summarized, namely:

1. That it is not an Act creating counties and providing for the government thereof, as it makes no provision for payment of expenses of county governments, and in violation and disregard of the principle of local self-government ignores local taxation within each county and contains no provision for assessment of property and collection of local taxes for support of the county government, thereby making counties a Territorial

charge, undertaking to support and maintain the local government of each county out of Territorial revenue, and applying the credit of the Territory to the support and maintenance of the local government of each county; rendering the counties merely beneficiaries of the Territory, and compelling the taxpayers of the entire Territory to support the local government within each county.

2.   That the Act violates section 45 of the Organic Act requiring "that each law shall embrace but one subject which shall be expressed in its title," since it purports to create counties and is therefore new legislation not amendatory of or supplementary to pre-existing legislation, and assumes to transfer many of the duties of the superintendent of public works, of the attorney general, of the high sheriff and of other Territorial officers to the counties and their local officers; and covers distinct changes in pre-existing laws affecting whole systems of the Territorial government and chapters of the Revised Laws.

3.   That except as to certain salaries the Act contains no definition of or limitation upon the expenditures of counties and provides no fixed revenue for their support and maintenance or for payment of local expenditures.   The only limitation of expenditures is that they fall within the 50 per cent. of the total amount of poll and school taxes and taxes on property and income collected in each county, which by Act 93 is to be paid to county treasurers.   Such a plan for payment of local expenditures is impracticable and incapable of enforcement.   There is no limitation upon the amounts for which county warrants are to be drawn by the auditor upon the treasurer of the Territory in favor of county treasurers.   Act 93 "relating to funds for the payment of expenses for the several counties" transfers to the auditor powers that could be legally exercised by the legislature only, or if requisite powers were delegated to them, by the boards of county supervisors.   The auditor is invested by Act 93 with discretion to determine the amounts above 10 per cent. of the estimated taxes payable to each county within six months from July to December next and afterwards not less than 15 per

cent., for which monthly warrants shall be drawn, there being no proportion fixed between the warrants and the actual or current expenditures of the counties. Act 93 compels the Territorial treasurer, if there is no money in the treasury to pay the monthly warrants, to register them and thereafter until paid they bear interest at 5 per cent. per annum, thereby creating an enforced loan by the Territory to the counties for which the Territory is charged interest, the Territorial credit as well as its cash revenue being thereby applied to the support and maintenance of counties.

4.   That in transferring to the counties the right to "open, construct, maintain and close up public streets, highways, roads, alleys, trails and bridges," the Act transfers powers now exercised by the superintendent of public works, aided in some instances by the governor and high sheriff, thus materially and radically changing the road system of the Territory.

5.   That Act 93 provides that the road taxes shall be a special deposit in the Territorial treasruy to the credit of each road district, to be paid by the treasurer of the Territory to the county treasurers and "expended only for the maintaining and repairing of public roads and highways in the several road districts as authorized by the supervisors of the county from time to time." This is a transfer from the management of the superintendent of public works, inaugurating a system which conflicts with the Territorial system, and is legally impracticable and incapable of enforcement. The Act also impairs the obligation of the bonds of the Territory in depriving them of the security of the consolidated territorial revenues to the extent of 50 per cent. of the taxes required by Act 93 to be paid over to the counties.

6.   That the Act in requiring bonds of supervisors to be approved by circuit judges imposes upon them functions not judicial, and not according to the course of common law or equity or to any provision of the Organic Act.

7.   That the Act violates those provisions of the Organic Act which require that "there shall be an attorney general," a superintendent of public works, a high sheriff and deputies, and which

require that they severally "shall have the powers and duties" mentioned or referred to in the Organic Act "except as changed by this Act and subject to modification by the Legislature." It is claimed that the powers and duties entrusted to and required of those officials by the terms of the Organic Act are not merely modified by the County Act but practically are obliterated and transferred to county officials.

8.  That the Act deals with contested elections, and also with impeachment of supervisors, subjects not cognate to its title, and is an attempt to confer jurisdiction on the Supreme Court in those matters.

9.  That the county of Kalawao established by the County Act is identical with the leper settlement, which the Act leaves under the control of the Board of Health, and which is incapable of organization into a county while under the control and management of the Board. That the chapter relating to this matter is unconstitutional in providing that the salary of the sheriff shall be fixed and paid by the Board of Health out of the Territorial appropriation, and that the pay of policemen in that county shall be fixed and paid by the Board out of Territorial funds, and also in fixing the appointment of a sheriff in the Board, which has no power to make such appointment.

10.  That section 112 of the County Act providing that "All laws or parts of laws, so far only as the same may be inconsistent with any provision of this Act are hereby repealed," is insufficient and void in failing to specify the repealed Acts and parts of Acts, so that it is legally impossible to determine what laws are intended to be repealed.

When the case was presented for argument the plaintiff's attorney asked leave to amend the submission by inserting the additional ground that the Act had not been approved by the Governor in accordance with the requirements of section 56 of the Organic Act as amended by Act of Congress of March 3, 1905, (33 Sts. at L. 1035) requiring that county officials "be appointed or elected, as the case may be, in such manner as shall be provided by the Governor and legislature of the Territory.'

The defendant's counsel objecting the court declined to allow this amendment.

The defendant denying that the Act is invalid for any of the reasons named in the submission claims that even if the Act were invalid equity has no jurisdiction to grant an injunction against him at the suit of a taxpayer or of a bondholder whose bonds are not shown to be in danger of being defaulted.

That the remedy sought by the plaintiff is available to him in his capacity as a citizen and taxpayer appears to be within the rule in *Castle et al., v. Kapena*, 5 Haw. 27 (1883). The petitioners in that case applied for a writ of mandamus to require the minister of finance to accept only United States gold coin or its equivalent for Hawaiian bonds payable in United States gold coin about to be issued by him in pursuance of an Act of the legislature, and not to accept therefor silver coin, averred to be only about 82 per cent. of the value of the gold coin. The court held that issuing the bonds for silver of less par value than gold would be illegal and that "a loss and injury would accrue to the country thereby and to every taxpayer, and the question is raised whether the petitioners can resort to this court to protect themselves." *Ib.* pp. 34, 35. "The principal objection," said the court, "to permitting suits to be brought by private taxpayers, is said to be the annoyance to public officers by a multiplicity of suits. The answer to this, as well as the doctrine in such cases, is set forth in a recent case in the Supreme Court of the United States, *Crampton v. Zabriskie*, 101 U. S. Reports, heard in 1879. We quote the language of Mr. Justice Field at large:

'Of the right of resident taxpayers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county, or the illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the state courts in numerous cases, and from the nature of the powers exercised by municipal corporations, the great dangers of their abuse, and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere,

upon the application of the taxpayers of a county, to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to creat burdens upon property holders.   The courts may be safely trusted to prevent the abuse of their process in such cases.' "   The court also cites in the *Kapena* case *U. P. Railroad Company v. Hall,* 91 U. S. 343 in 1875, where Strong, J., says: "There is a decided preponderance of American authority in favor of the doctrine that private persons may move for a mandamus to enforce a public duty, not due to the Government as such, without the intervention of the Government law officer."   The court declined, however, to grant the writ, but solely upon the ground that injunction rather than mandamus was a "preventive remedy."

In *Larcom v. Olin,* 160 Mass. 102, (1893), a similar question was presented in a petition by inhabitants, taxpayers and voters of the town of Beverly for a writ of mandamus to.command the secretary of the commonwealth not to attest or deliver to the clerk of the town or any other person a copy of the provisions of articles of city government consented to by vote of a majority of the inhabitants present and voting at a meeting called for the purpose of deciding whether the town would become a city.   A second petition was also presented by inhabitants praying that the votes at the meeting be declared null and void and that the secretary be perpetually enjoined from attesting or delivering to the clerk of the town or any other person a copy of the proposed articles of city government.   The court, while denying the injunction on the ground that "It is not within the general powers of a court of equity to supervise the conduct of public officers in the performance of their official duties, or to prohibit such officers from acting or to compel them to act in matters which concern political and personal rights, as distinguished from rights of property, granted the petition for mandamus saying: "It is suggested in the brief of the petitioners that courts in some jurisdictions have held that mandamus cannot be used as a preventive remedy; but this objection is not taken by the respondents, and, if it affects anything more than the form of the order to be issued by the court, it may perhaps be

met by considering the petition as in substance a petition for a writ of prohibition."

State decisions cited for and against the exercise of jurisdiction such as is claimed by the plaintiff are interesting and of value to the student of law, but, as above stated, the question has been decided by this court in favor of the exercise.

The U. S. Circuit Court of Appeals for the ninth circuit has held that an early decision of this court, modifying a rule of the common law, to the extent of giving to legal representatives of a decedent a right of action for the fatal injury had the approval of the Organic Act in its provision for continuance in force of laws of Hawaii. *Schooner Robert Lewers,* 114 Fed. 849. The *Kapena* case was expressly affirmed in *Lucas v. American-Hawaiian Engineering & Construction Co., ante,* p. 86, in which the court used the following language:

"The right of a taxpayer to bring suit to restrain a public officer from doing an illegal act has been settled in this jurisdiction since the case of *Castle et al. v. Kapena,* 5 Haw. 27 (1883)." We see no occasion to depart from this rule. The argument that a single taxpayer may not represent the wishes of the majority and that a question of public interest ought not to be adjudicated at his sole instance, with no opportunity for expression of opposing views, does not, in our opinion, affect his right to an adjudication. Any person, citizen or not, accused of an offense, may raise the question of the constitutionality of the law under which he is tried, and no one but himself and the prosecution is entitled to be heard upon it. Adjudicating the constitutionality of the act in advance of county organization avoids unnecessary expense and complication if the decision is adverse to the Act, and, if in its favor, furnishes desirable assurance of legal protection to those who shall be elected to county offices besides having burdensome and expensive litigation in respect of matters so adjudicated.

While equity has not jurisdiction to determine political rights but is confined to questions affecting rights of property, it appears to us that the case presented by the plaintiff in his

capacity as a taxpayer comes within equitable jurisdiction for protection of property rights against acts of executive officers under unconstitutional statutes.

It is contended by the defendant that an injunction to restrain illegal expenditure of money, if issued at all, must be directed not against the secretary but the treasurer or auditor. This contention appears to us to be well grounded and might necessitate amendment of the submission if cause were shown for holding the County Act to be invalid.

The validity of the Act affects this community profoundly. As a measure intended to establish self government over local affairs, a principle which is the basis of our state and national systems, it ha been urged by all partie. The Organic Act grants unrestricted suffrage, by the exercise of which the needs and wishes of the citizen are intended to be expressed and carried into effect by laws enacted by the legislature. The grant of legislative power contained in the Organic Act includes "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable," and expressly includes the power to "create counties and town and city municipalities and provide for the government thereof." There is no limitation upon this power except as found in the provisions of the Organic Act and in the Constitution. The desire of the voters to obtain and by officers elected by themselves to exercise all the control over their local affairs which can be obtained within this limitation ought not to be interfered with by the judiciary upon doubtful or uncertain grounds. It is essential for the welfare of Hawaii, for the security of life and property that the measure devised for establishing this principle, imperfect in many details and to a certain extent tentative as it well may be and yet be a valid measure, shall be free from such radical defects as would defeat its object. With political or financial objections to the Act, if any there be, this court has nothing to do. We have only to decide whether any of its vital features are so inconsistent with the Organic Act as to require the inference that it is not authorized thereby. It is to be observed that

the organization of counties with their proper officers for attending to their own affairs necessarily is inconsistent with all those laws of Hawaii relating to such portions of the duties of Territorial officers as properly are included in the duties and functions of county officers. No County Act can be regarded as unauthorized by the Organic Act by reason of such inconsistency.

The disposition of public funds is no moot or abstract question but vitally concerns every taxpayer. We trust that the time will never come in Hawaii when taxpayers shall not care to seek by appropriate proceedings in court to avert unlawful use of public money in connection with an unconstitutional statute. But there is something far more important than such exhibitions of public spirit on the part of taxpayers, and that is a feeling of confidence that courts will interpret the laws and declare the law with judicial impartiality unbiased by personal feeling or motive. Nothing can be more deplorable, more abhorrent to true Americanism, than a belief, thus far it is to be hoped felt by few persons, that our courts in interpreting statutes can reach conclusions to satisfy their own wishes, likes or dislikes. It ought to be unnecessary to say that what we may think of the wisdom or advantages of county government under existing conditions in Hawaii has nothing to do with the questions of law at issue. Our opinion concerning the practical working of this or of any other system of county legislation, whether it appears to us that larger opportunity for effectuating popular wishes in the expenditure of public money or in other matters is thus afforded or not, is immaterial and irrelevant to the examination of those questions. With these convictions of judicial duty we have examined and decided the law involved in this case.

The agreed statement sets forth the plaintiff's grounds or reasons for claiming the invalidity of the Act in more detail and variety of form than appear in the above summarized statement of them and his attorney in argument illustrated and enforced the plaintiff's claims from several points of view.

We have already observed that the Act would not be uncon-

stitutional because in provisions for government of counties and control of county affairs by elected county officers, it conflicts, as to a considerable extent it must do, with provisions in the Organic Act for Territorial government by appointive Territorial officers, nor even if in some matters it unnecessarily substitutes county officers for Territorial officers. Considerable discretion must be allowed for the exercise of the expressed power to create counties and provide for their government. A narrow, rigid construction of the meaning of that power is not required for the accomplishment of any express or implied purpose of the Organic Act, and therefore is inappropriate.

Creating counties and providing for their government does not require and therefore does not imply the abrogation of the functions in respect of Territorial affairs of the Territorial officers such as the attorney general and superintendent of public works. As far as officers other than the attorney general are concerned, we do not consider that the Act unduly encroaches upon their prescribed functions. The Organic Act places with the attorney general the duty of prosecuting violations of Territorial penal laws and claims, together with many other duties imposed upon him by the laws of Hawaii, subject to such "modification" as the legislature may by law enact. The provision that these duties "are subject to modification by the legislature" was not necessarily made solely with reference to the authority "to create counties," etc., but may appropriately relate as well to details making those duties more specific, or enlarging them but not substantially revoking them nor substituting for their performance another officer in place of the attorney general.

The Territory as well as counties is concerned in the enforcement of Territorial penal laws. It is the Territory and not the counties to which accrue fines and costs for violation of Territorial laws and the proceeds of Territorial claims. To place with county attorneys to the exclusion of the attorney general the duty of prosecuting them would not be a "modification" of the attorney general's duties but practically a repeal of that portion of the

Organic Act which relates to them. Violation of county ordinances and prosecution of county claims would properly be entrusted to county attorneys only, but that is the extent to which their exclusive authority can go without subverting the Territorial system provided by Congress. Even if it were true that the Act in respect of the attorney general's functions or in some other respects goes further than is contemplated by the provisions of the Organic Act for county government, there is nothing therein which appears to us to invalidate the Act. The result would simply be that the attorney general would still be authorized to perform all of his functions as prescribed by the Organic Act as far as they concern Territorial matters. This is perhaps the intent of the provision in the County Act which makes the county attorneys the deputies of the attorney general.

Further considering the objections presented to the County Act it is to be observed that a county is the agent or instrumentality of the state or territory and has such powers only as are granted by the statute creating it. Whether counties have the scant powers given them in the New England states or the larger powers given in newer states is something which does not affect the validity of the Act.

Counties may properly share in Territorial tax money assessed and collected by assessors and collectors of the Territory.

We find nothing in the Act which is not expressed in its title in the sense of being properly incident germane or cognate thereto.

The large discretion given by each of the acts in question to county supervisors, as well as to the auditor of the Territory, concerning expenditures of public money and the extent and objects, of such expenditures, may or may not be wiser or desirable and may or may not give better opportunity for expression of popular wishes in those matters than is afforded by the present Territorial system. Such considerations, however, do not invalidate either of the acts.

The control of roads and bridges transferred to counties is a modification of the powers and duties of the superintendent of public works and essential to the control by counties of their own affairs.

There is nothing in the Organic Act which precludes placing upon circuit judges the function of approving bonds of supervisors or empowering this court to deal with contested elections.

The provisions of the County Act making the leper settlement a separate county under the control of the Board of Health conflicts with no provision of the Organic Act.

The section repealing inconsistent laws is sufficient for its purpose, leaving cases of doubt for judicial construction. Even without this section such repeal "is implied when the new law contains provisions contrary to or irreconcilable with those of the former law."   Sec. 21, R. L.

All of the matters presented have been ably argued and have received our careful attention, but we do not find that either the County Act, being Act 39, as amended by Act 54, or that Act 93 of the session laws of 1905, upon any of the grounds presented, is unauthorized or prohibited by the Organic Act, or that for any of those grounds or reasons Act 39, as amended or Act 93 is invalid.

In conformity with this opinion the injunction sought by the plaintiff ought to be denied, and it is decreed accordingly.

*H. E. Highton* for plaintiff.

*Deputy Attorney General M. F. Prosser* and *H. E. Cooper* for defendant.