FEDERAL ELECTRIC CORPORATION, a Delaware corporation, Plaintiff-Appellee, *v.* FRANK F. FASI, PAUL DEVENS, JAMES K. SAKAI and MOTOROLA COMMUNICATIONS AND ELECTRONICS, INC., Defendants-Appellants

NO. 5620

OCTOBER 31, 1974

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND CIRCUIT JUDGE HAYASHI IN PLACE OF LEVINSON, J., RECUSED, AND CIRCUIT JUDGE KATO IN PLACE OF KOBAYASHI, J., DISQUALIFIED

58

OPINION OF THE COURT BY MENOR, J.

This action was brought by Federal Electric Corporation [hereinafter FEDERAL], as an unsuccessful bidder and taxpayer to set aside a contract awarded by the City and County of Honolulu [hereinafter CITY], to Motorola Communications and Electronics, Inc. [hereinafter MOTOROLA]. In addition to Motorola, named as defendants on behalf of the City were Frank F. Fasi, City Mayor, Paul Devens, City Managing Director, and James K. Sakai, City Finance Director. The trial court rendered judgment in favor of Federal, holding that the contract awarded to Motorola was null and void, and specifically finding that the action of the City in awarding the contract to Motorola was arbitrary and capricious, and constituted an abuse of administrative discretion.

The City was seeking to upgrade its police department's communications system through the use of federal funds made available through the Law Enforcement Assistance Administration [hereinafter LEAA]. Initially, it had entered into a contract with Motorola for Phase I of the multi-phased endeavor without public advertising or competitive bidding as required by law. As a result, by mutual agreement the contract was rescinded.

Because of the extremely complex technological problems involved in improving the island-wide communications of the Honolulu Police Department [hereinafter HPD], Frank Sites of the firm of Holmes & Narver was hired by the City to consult on the development of technical specifications re-

garding this project.

Sites prepared the specifications, and upon review and approval of the HPD and Sakai, included them in the bid package, together with provisions relating to general and special conditions. Due to the nature of the project, however, and apparently because the contract had to be awarded before the deadline established by the federal government for the granting of LEAA funds, specifically detailed technical specifications were not formulated. The City, instead, opted for the "request for proposal" method, which it had never before used, and for which no regulatory guidelines had been provided. LEAA funding at this time dictated that the federal funds be committed by June 30, 1973.

Following the acceptance by the HPD and the City of the Sites specifications, the required notice to bidders was published commencing March 27, 1973. Bidders were informed by this notice that they must first pre-qualify as financially and competently able to perform the requirements of the project. Four firms, including Federal and Motorola, were found qualified to bid.

The specifications prepared by Sites along with allied documents constituting collectively the "bid package" were made available to pre-qualified bidders on or about April 20, 1973. Only Federal and Motorola submitted bids. The bids were opened on June 1, 1973. The bid submitted by Federal totaled $840,876, that of Motorola $934,248, a difference of $93,372. The bids represented the costs of the different systems and equipment being proposed by each bidder over the term of the five-year period. Both were within the budget originally established by LEAA and the City.

Sites evaluated the bids and asked for and received clarification of the information contained in the proposals of both bidders. His initial evaluation and recommendation to the City was made orally to Sakai on June 18, 1973, and later confirmed by letter dated June 20, 1973. In spite of the lower figure submitted by Federal, Sites found Federal's bid to be unacceptable and consequently Motorola's to be the only responsive, compliant bid.

On June 20, 1973, Sites, through Sakai, requested Fed-

eral to answer nineteen questions within five days with respect to its bid. Federal responded on June 25, 1973, and its answers were turned over to Sites. On June 29, 1973, a meeting was held between Federal's representatives and Sakai and Sites, relative to Federal's bid. The next day, June 30, after further discussions between Sites and Sakai, the City notified Motorola that it had been awarded the contract. Sites thereafter again reduced his recommendations to writing in a letter to Sakai, dated July 6, 1973. The contract between the City and Motorola was executed on July 17, 1973.

On reviewing the decision of the trial court, we find the principal issue to be, whether the bidding procedure was inherently defective so as to render the contract invalid. Assuming the validity of the method employed, the question then would be, whether Federal, as the losing bidder, should have been afforded a hearing before its bid was rejected.

I

Clearly, the technical specifications developed by the City with the assistance of its consultant were not sufficiently detailed, definite, and precise to afford a basis for full and fair competitive bidding upon a common standard. *Lucas v. Amer. Haw. E. & C. Co.*, 16 Haw. 80 (1904); *Wilson v. Lord-Young Engineering Co.*, 21 Haw. 87 (1912). As such, they were totally inadequate for conventional bidding purposes.

> A fair competition among the bidders is the prime object of [the statute], and anything which tends to impair this is illegal. . . . [The statute] requires such information to be put within the reach of bidders as will enable them to bid intelligently and will enable the official having charge of the proposed work to know whose bid is the lowest. The character of the work and the materials of which it shall be composed must be decided in advance. *Lucas, supra* at 90.

The City instead decided to employ a "request for proposal" bidding procedure which was obviously patterned after the "two-step formal advertising" bidding method developed by the federal government. This method is used

chiefly by the Armed Services, particularly in areas where the complexity of the system or equipment desired, as well as limitations of time, has rendered unfeasible or inadvisable the prior development by the purchasing authority of its own detailed technical specifications. *See* 1A J. C. MCBRIDE & I. H. WACHTEL, GOVERNMENT CONTRACTS § 10-120 (1973); Armed Services Procurement Regulation [ASPR] §§ 2.501 *et seq.* (April 1973).

In our opinion, neither case law nor statutory authority in this jurisdiction prohibits a government agency from employing this "two-step" bidding procedure, so long as that agency has promulgated rules and regulations to insure fair and open competition among bidders. Even then, its use should be strictly limited.

In *Step One* of the federal procedure, the procurement office advises prospective bidders of the current status of its project, its goals and its objectives. It also provides them with technical specifications which are not in themselves sufficiently detailed to permit bidding by the conventional method. Prospective bidders are then invited *to submit for evaluation unpriced technical proposals based on these specifications, goals, and objectives.*

These *unpriced* proposals are thereafter evaluated by the technical personnel of the procuring agency. The proposals, as submitted, are classified either as (1) acceptable; (2) reasonably susceptible of being made acceptable by additional information clarifying or supplementing, but not basically changing the proposal as submitted; or (3) unacceptable. With a view toward maximizing competition, the contracting officer is required to afford bidders whose proposals have been placed in category (2) a meaningful opportunity to upgrade them to a requisite degree of acceptability. ASPR Section 2.503.1 (April 1973). To the extent practicable the officer must advise such bidders of the nature of the deficiencies in their proposals as submitted and the nature of the additional information required. The officer may arrange discussions with these bidders for this purpose, and must act in good faith to afford bidders this opportunity to make their bids compliant.

62

In *Step Two,* following this evaluation, formal invitations to bid are extended to those prospective bidders whose proposals have been finally found to be acceptable. It is only at this point that the bidders are asked to submit *priced* bids. The winning bid is then determined essentially as in conventional bidding practices, price and other factors considered.

What the City opted for in this case was neither a conventional procedure nor a pure two-step bidding method. On the contrary, the City lumped together Steps One and Two of the usual federal practice. With the assistance of consultant Sites, the City made available to prospective bidders the required general specifications,[1] and then invited prospective bidders to submit their proposals, *together with their respective price tags for the contract, if awarded.* This was tantamount to a request of each bidder to formulate and submit its own plans and specifications with its bid price, after which the City would adopt one of the proffered plans with its respective specifications and accept the accompanying bid. Such a procedure patently violated the very essence of competitive bidding. *Cf. Sweezey v. Mayor of Malden,* 273 Mass. 536, 542, 174 N.E. 269, 271 (1931). A contract cannot be said to have been awarded to the lowest responsible bidder, unless all participants in the bidding process have been invited to respond to the same specifications. *Little v. Town of Southgate,* 223 Ky. 735, 740, 4 S.W.2d 711, 713-4 (1928) and cases therein cited.

The trial court found no evidence of fraud or favoritism on the part of the city authorities in this case, and we are satisfied that there was none. The method here employed, however, did provide the opportunity for favoritism, extravagance, and improvidence in awarding a public contract. The fact that the procedure was susceptible to abuse and manipulation rendered it illegal. *Lucas v. Amer. Haw. E. & C. Co., supra; James Petrozello Co. v. Township of Chatham,* 75 N.J. Super. 173, 182 A.2d 572 (1962).

---

[1] The technical specifications prepared by Sites were sufficient under the "two-step" bidding procedure. *See, e.g.,* Appeal of Sylvania Electric Products. Inc.. 64 BCA 4065 (1964).

The City argues that within its discretionary power it was authorized to reject Federal's proposal as being nonresponsive. *See* HRS § 103-27; *Foster v. Honolulu Construction & Draying Co., Ltd.*, 21 Haw. 689 (1913). The fallacy in the City's argument is that it assumes the existence of definitive specifications against which Federal's proposals could be measured, and by which the soundness of the City's exercise of its discretion could be judged. Here there were no such definitive guidelines. Moreover, there was no finding by the trial court that Federal's bid was either nonresponsive, or could reasonably have been found to be so. On the contrary, the trial judge stated:

> That, without going into detail regarding the testimony setting forth the merits and demerits of the proposals of the two bidders, I find from the whole of such evidence, and especially the expert testimony, that reasonable technologists could differ as to which was the lowest responsible bidder, price and other factors considered.

While a contracting officer is vested with broad discretion in determining who is the lowest responsible bidder, *see Wilson v. Lord-Young Engineering Co., supra,* the discretion allowed him under the method employed by the City in this case exceeded permissible limits. Not only were definite and precise specifications unavailable, but also lacking were regulatory guidelines aimed at insuring fair and open competition among bidders. In consequence, the consultant and the City were free to formulate their own rules as they deemed the occasion demanded. The meeting of June 29, 1973, is an example. Called by the City, its purpose was to enable the city finance director, through his consultant, to pose several questions to Federal relative to its proposal. The finance director testified that the general purpose of the meeting was to clarify for the consultant any discrepancies or ambiguities in the Federal bid. Regarding this meeting, however, the trial court found:

> [T]he consultant directed to chair the meeting was instructed to propose questions to the lowest bidder [FEDERAL], but not to pay any attention to whether the

questions were or were not correctly answered.

It is obvious that there was no real attempt to engage in any meaningful discussion with Federal regarding its proposal. By the consultant's own admission, he was totally unprepared for the unexpected meeting.

Motorola nevertheless argues that Federal's failure to cross appeal should now foreclose it from asserting the invalidity of the bid procedure employed by the City, This argument is without merit.

An appellee may urge in support of the judgment appealed from any matter appearing in the record, even where his arguments involve an attack on the reasoning of the trial court. *Jaffke v. Dunham,* 352 U.S. 280 (1957); *United States v. American Ry. Exp. Co.,* 265 U.S. 425 (1924). Moreover, we have repeatedly held that where the trial court has reached a correct conclusion, its decision will not be disturbed on the ground that the reasons it gave for its action were erroneous. *See, e.g., Waianae Model Neighborhood Area Ass'n., Inc. v. City and County of Honolulu,* 55 Haw. 40, 514 P.2d 861 (1973).

Of more serious import is the contention of Motorola and the City that because Federal participated in the bidding, it is now estopped from questioning the validity of the method employed. In support of their position they point to *Munoz v. Comm'r. Pub. Lands,* 40 Haw. 675 (1955). That case, however, is distinguishable. There this court ruled that the plaintiff, suing as a taxpayer and unsuccessful bidder, was equitably estopped from asserting the invalidity of an auction sale. We held that where the plaintiff remained silent and accepted the benefits of the sale by taking part in the bidding, he was estopped from arguing any irregularities in the procedure. In that case, however, the procedure itself was not inherently defective, and only the irregularities attending its administration were challenged on appeal.

Federal has sued alternatively as a taxpayer and as an unsuccessful bidder. While it may not have standing solely as an unsuccessful bidder to challenge the validity of the bid procedure in this case, *cf. Air Terminal Services v. Matsuda,* 47 Haw. 499, 505, 393 P.2d 60 (1964), Federal does have the

right, as a taxpayer, to assert its invalidity. *Wilson v. Lord-Young Engineering Co.*, *supra; Lucas v. Amer. Haw. E. & C. Co.*, *supra*.

In *Wilson*, the unsuccessful bidder brought his action in the capacity of a taxpayer. In concurring with the majority that the award should be set aside on the ground that the specifications were fatally defective, Justice Perry noted:

Nor is it an answer that the bidders themselves filed their bids without raising the objection or that this complainant apparently did not appreciate its force until after the respondents' answers were filed. The defects in the specifications and its consequences to the taxpayers are not for that reason any the less real. *Id*. 21 Haw. at 99.

*See Air Terminal Services v. Matsuda*, *supra*, 47 Haw. at 543, 393 P.2d at 84 (dissenting opinion of Mizuha, J.).

Additionally, as an unsuccessful bidder whose bid has been rejected in favor of another, Federal retained the right to assert the arbitrariness of the rejection and the resultant award to Motorola. *Marshall Co. v. Bigelow*, 29 Haw. 48 (1926).

II

Assuming *arguendo*, that the bidding procedure employed by the City was capable of being legally resurrected, we nevertheless would have to agree with the trial court that a hearing in this case would have been required.

We do not mean to imply, however, as did the trial court, that the failure to conduct a hearing where the lowest monetary bid is not accepted invariably renders the resulting award arbitrary per se. The City and Motorola are correct in their assertion that only where the responsibility of a bidder is in issue will a hearing be required.[2] HRS § 103-25. We stated as much when we said in *Air Terminal Services, supra:*

If a particular bidder was thought to be positively unqualified, either from the standpoint of competence or any other, then under [the statute] and [*Wilson*] there had

---

[2] *But compare*. Motorola Com. & Electronics v. O'Connor, 115 N.J. Super. 317, 279 A.2d 855 (1971). *See also* Commercial Clean. Corp. v. Sullivan, 47 N.J. 539, 222 A.2d 4 (1966).

to be a hearing thereon, following which the Commission could exercise its undoubted discretion in the matter. If such was not the situation but the *quality of service*, for example, was to be taken into account, the weight to be given thereto and the manner in which the quality of service was to be judged had to be set out in the bid documents. *Id.*, 47 Haw. at 539, 393 P.2d at 82. (Emphasis added).

A responsible bidder in this context is "one who is not only financially responsible, but who is possessed of the judgment, skill, ability, capacity and integrity requisite and necessary to perform the contract according to its terms." *Wilson, supra,* 21 Haw. at 94; *City of Inglewood-L.A. Cty. Civ. Ctr. v. Superior Ct.,* 7 Cal. 3d 861, 103 Cal.Rptr. 689, 500 P.2d 601 (1972).

The situation here, however, was unique. Where the conventional bidding method was not employed, and an innovative procedure without benefit of definitive guidelines was instead utilized, fairness dictated that Federal, as the lowest monetary bidder, should have been advised of the shortcomings of its proposal. It should then have been given the opportunity to be heard and to present clarifying and supplementary information bearing upon its proposal, *without increasing its bid offer, and without basically changing its proposal as submitted. Cf.* ASPR § 2.503.1 (April 1973). After having afforded Federal this opportunity to establish the acceptability of its proposal, the City could then have exercised its discretion and selected the lowest responsible bidder, price and other factors considered. Revised Charter of the City and County of Honolulu 1973, § 8-301. This, however, was not done, and in any event the method employed by the City rendered the award to Motorola invalid per se.

Those portions of the judgment of the circuit court setting aside the contract between the City and Motorola, and awarding reimbursable costs against the City, are hereby affirmed. We express no opinion as to those portions of the judgment not pertinent to our decision herein.

*Wayne Nasser (Charles B. Dwight, III* with him on the briefs, *Ashford* and *Wriston* of counsel) for plaintiff-appellee.

*Robert M. Rothwell*, Deputy Corporation Counsel *(Richard K. Sharpless*, Corporation Counsel of counsel) for defendants-appellants Fasi, Devens and Sakai.

*Bert T. Kobayashi, Jr.*, *(Kobayashi, Koshiba* and *Watanabe* of counsel) for defendant-appellant Motorola.