GULSTAN A. IULI, et al., Plaintiffs-Appellants, *v.* FRANK F. FASI, in his individual capacity and also as Mayor of the City and County of Honolulu, et al., Defendants-Appellees, and HAWAII TEAMSTERS AND ALLIED WORKERS, LOCAL 996, Intervenor.

NO. 6234

JUNE 23, 1980

RICHARDSON, C.J., OGATA AND MENOR, JJ.*

---

* Justices Kobayashi and Kidwell, who heard oral argument in this case, retired from the court on December 29, 1978, and February 28, 1979, respectively. HRS § 602-10 (1979 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam*. Plaintiffs-appellants Gulstan A. Iuli, Rocky Mataalii, Henry Kanahele, Leroy Keliiliki, Robert Auelua, Jr. and William Uale, appeal from the judgment of the First Circuit Court granting summary judgment in favor of defendants-appellees Frank F. Fasi, the City Council, MTL, Inc. and James K. Sakai. We affirm.

Plaintiffs' second amended complaint alleged standing by virtue of their status as private citizens and individual taxpayers of the City and County of Honolulu. The action charges the defendants with wilful and intentional violation of HRS § 103-22[1] and § 8-301(3)[2] of the 1973 Honolulu Charter authorizing an "Interim Agreement" executed between the City and MTL. The complaint seeks injunctive relief and

---

[1] HRS § 103-22 provides:

Advertisement for bids required; exceptions. No expenditure of public money, except salaries or pay of officers or employees, or permanent settlements, subsidies or other claims or objects for which a fixed sum must be paid by law, or for other purposes which do not admit of competition, or for the purchase of materials or supplies from any other department, bureau, organization, or municipal or political subdivision of the federal, state, municipal or county governments, other than University of Hawaii bookstores, or for the performance of public work or contracts by any other such department, bureau, organization, or municipal or political subdivision of the federal, state, municipal or county governments, where the sum to be expended is $8,000 or more shall be made except under contract let after public advertisement for sealed tenders, in the manner provided by law. In all cases of expenditures of public money that is more than $4000 but less than $8000, a call for informal bids shall be published at least once in a newspaper of general circulation printed and published within the State; provided that in the case of public works or repairs and maintenance of buildings, roads and other site improvements where the expenditure is more than $4,000 but less than $15,000, a call for informal bids shall be published at least once in a newspaper of general circulation printed and published within the State. No expenditures for public purposes shall be so divided or parceled as to defeat or evade this section.

[2] § 8-301(3) of the 1973 Honolulu Charter reads:

3. All purchases and contracts for materials, supplies, equipment and services shall be made by advertising, except that such purchases and contracts may be negotiated without advertising if:

(a) The public exigency will not admit of the delay incident to advertising.

(b) The aggregate amount involved does not exceed $4,000.00; however, any purchases or contracts involving sums between $500.00 and $4,000.00 shall be based on competitive bids which shall be in writing.

(c) It is impracticable to secure competitive bidding for materials, supplies and equipment, including animals, plants, food and fodder for ani-

general and punitive damages against the separate defendants.[3] The Interim Agreement, entered February 25, 1971, provided that MTL would manage, supervise and operate on a "temporary basis all buses and equipment acquired or leased by the City" until the City could complete acquisition of HRT (which at the time was incapacitated by a Hawaii Teamsters and Allied Workers Local 996 strike).[4]

Plaintiffs charged defendants with unlawfully authorizing the execution of the contracts without public notice of bids as required by HRS § 103-22 and § 8-301 of the Honolulu Charter.[5] Motions for Summary Judgment were filed by each of the

---

mals in the zoo, non-processed agricultural products, patented or proprietary articles and books and publications.

(d) It is determined that the procurement of equipment determined to be technical equipment is necessary to assure standardization of the equipment and interchangeability of parts and that such standardization and interchangeability are necessary in the interest of economy.

The advertisement for bids shall be made a sufficient time before the purchase or contract, and specifications and invitations for bids shall permit such full and free competition as is consistent with the procurement of the types of materials, supplies, equipment and services necessary to meet the requirements of the agency concerned.

All bids shall be publicly opened at the time and place stated in the advertisement. Award shall be made with reasonable promptness by written notice to that responsible bidder, whose bid, conforming to the invitation for bids, will be most advantageous to the city, price and other factors considered.

[3] The individual defendants included Frank Fasi, Mayor of the City and County of Honolulu, George Koga, George Akahane, Rudy Pacarro, Toraki Matsumoto, Frank W. C. Loo, Daniel Clement, Jr., Marilyn R. Bornhorst, Wilbert S. Holck, Kekoa D. Kaapu (city council members) and James Sakai, Director of Finance of the City and County of Honolulu, Walter Heen, James Shigemura, Clesson Y. Chikasuye and Mary George.

[4] HRT was Honolulu Rapid Transit Company, a private corporation responsible for operating a public mass transit system for and within the City and County of Honolulu. The MTL Interim Agreement with the City was executed in response to the Teamsters strike against HRT, a strike that stopped operation of HRT on February 25, 1971.

[5] Plaintiffs also alleged violations of § 9-401 of the 1959 Honolulu Charter. However, since the Charter had been subsequently revised and § 8-301 of the 1973 version embodies the exact language of § 9-401, § 8-301 will be the section hereinafter cited.

separate defendants. Hearings on the motions were held December 24, 1975 and January 7, 1976 before the Honorable Hiroshi Kato, Judge of the Circuit Court, First Circuit, and an Order Granting Summary Judgment in favor of all the defendants was entered on March 3, 1976. Plaintiffs' appeal from the order raises two main issues:

(1) Whether plaintiffs have standing to bring the action as individual taxpayers of the City and County of Honolulu;

(2) Whether the Interim Agreement between MTL and the City fell within the provisions of HRS and the Honolulu Charter requiring competitive bidding.

The question of plaintiffs' standing must be reached before we even consider the validity of the Interim Agreement. We conclude that plaintiffs lack standing to bring this suit.

Plaintiffs are all residents of the State of Hawaii and assert standing as taxpayers of the City and County of Honolulu. They allege that millions of dollars were expended by the City to pay MTL pursuant to the allegedly illegal Interim Agreement and that their taxes have been increased. They concede that they are unable to determine whether these increases were a result of the MTL contract but argue that under certain Hawaii cases involving taxpayers, damages to themselves and all taxpayers should be presumed. Defendants respond that damage to some interests or property of the taxpayer is a requisite of his right to sue and that actual pecuniary loss must be shown. Defendants further state that other requisites of standing as prescribed by a number of other state cases have not been met.

A review of this court's cases involving taxpayers' standing must be undertaken to resolve the initial question of plaintiffs' standing. Early Hawaii cases indicated that it was unnecessary for a plaintiff to show actual damage to himself where consequences of an action are so obvious that damages will be presumed. *Wilson v. Lord-Young Engineering Co., Ltd.*, 21 Haw. 87 (1912); *Castle v. Secretary of the Territory*, 16 Haw. 769 (1905); *Lucas v. American Hawaiian Electric Co., Ltd.*, 16 Haw. 80 (1904). However, the requisites for taxpayer standing were delineated more clearly in *Munoz v. Commis-*

*sioner Public Lands et al.,* 40 Haw. 675 (1955), where plaintiff, an unsuccessful bidder at an auction for a lease of land, sued on grounds that conditions of the statute requiring public notice of sale were not complied with. This court denied relief, stating that mere irregularity without more and not amounting to fraud was insufficient to justify intervention by the taxpayer. In addition to an illegal act, the act must be such as to imperil the public interest or work public injury. The petition must allege loss in revenues resulting in an increase in plaintiff's tax burdens or to taxpayers in general. Furthermore, in the absence of a statute governing such suits, demand upon the proper public officer to take appropriate action is a condition precedent to maintenance of a taxpayer's action unless facts alleged sufficiently show that demand to bring suit would be useless. *Accord, Helela v. State of Hawaii,* 49 Haw. 365, 418 P.2d 482 (1966); *Air Terminal Services v. Matsuda,* 47 Haw. 499, 393 P.2d 60 (1964). Thus, what emerges from these cases are specific requirements which must be met before standing to taxpayers is granted.

Under HRCP 56(c), a summary judgment will be granted only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lau v. Bautista,* 61 Haw. 144, 598 P.2d 161 (1979); *City and County of Honolulu v. Toyama,* 61 Haw. 156, 598 P.2d 168 (1979); *Hunt v. Chang,* 60 Haw. 608, 594 P.2d 118 (1979).

On review of a summary judgment proceeding, the standard this court should apply is identical to that employed by the trial court. *Gealon v. Keala,* 60 Haw. 513, 591 P.2d 621 (1979); *Technicolor v. Traeger,* 57 Haw. 113, 551 P.2d 163 (1976). Thus, the inferences drawn from the underlying facts alleged in the depositions, answers to interrogatories, admissions and affidavits must be viewed in the light most favorable to plaintiffs.

The facts presented by the record including the motions and materials in support of the motion for summary judgment indicate that essential elements necessary to maintain a taxpayer suit are missing. First, defendants have pointed out that the contract did not result in any kind of public harm or

injury. In fact, the Interim Agreement instituted a temporary bus system during the pendency of the HRT strike which worked a benefit to the public because it maintained the city's only major public transportation operation during a period of crisis. Secondly, plaintiffs could not show nor did they even allege actual pecuniary loss as a result of the contracts. At best they state only that their taxes have been increased but that admittedly they were unsure that this resulted from the contract. Speculative allegations of this nature lack merit and mandate dismissal. *Air Terminal, supra* at 536. Not only have these two points made by defendants not been controverted, but plaintiffs admit in depositions[6] that they did not suffer any cognizable loss as a result of the MTL contract. Finally, the last requirement — that demand be made upon the proper public official to take appropriate action — has not been fulfilled. Nor have plaintiffs alleged alternatively that such demand would have been useless.

Plaintiffs cite *Bulgo v. County of Maui*, 50 Haw. 51, 430 P.2d 321 (1967) and *Federal Electric Corp. v. Fasi*, 56 Haw. 57, 527 P.2d 1284 (1974) as supporting their arguments for standing. However, those cases involved special situations. In *Bulgo*, plaintiff-taxpayer sought to restrain the holding of special elections for Maui County Chairman in 1967. His complaint alleged that he paid real property taxes to the County of Maui which go into the county general fund out of which expenses for the special election are payable and that he would be irreparably damaged by the illegal expenditure of funds raised by taxation in holding elections under an invalid statutory provision. This court granted standing based on *Castle v. Secretary of the Territory, supra,* finding that plaintiff alleged sufficient personal interest in the controversy to entitle him to his "day in court." The controversy concerned the constitutionality of a special election and implicit in the court's holding was the recognition that voting rights and rights pertaining to the right to vote were of primary importance, mandating that each citizen be heard when questions

---

[6] Deposition of Henry Kanahele, November 4, 1975; Deposition of Gulstan Iuli, November 4, 1975; Deposition of William Uale, November 4, 1975.

involving these rights are raised. *Cf. State v. Robinson*, 50 Haw. 501, 444 P.2d 140 (1968) (plaintiff without interest in property which is subject of the case does not have taxpayer standing). Because the right to exercise the franchise is preservative of other basic civil and political rights, "any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). *See generally, Harper v. Virginia Board of Elections*, 383 U.S. 663 (1966); *Yick Wo v. Hopkins*, 118 U.S. 356 (1886); HAW. CONST., art. II.

The *Federal Electric, supra* case involved a plaintiff who sued alternatively as a taxpayer and as an unsuccessful bidder on a city contract to upgrade the police department's communications system. In granting standing based on plaintiff's taxpayer status, we recognized the obvious resulting injury to taxpayers where the bidding procedures used were found to be patently improper and defective.[7] The deleterious consequences to taxpayers flowing from such a method could be presumed.

However, the present case does not involve the fundamental right to vote nor the propriety of bidding procedures. Rather, at issue is whether a contract for operating and maintaining a public bus system even falls within the statutory requirements for public bidding. Therefore, we must strictly adhere to the requirements for taxpayers' standing previously set forth by this court. *Helela, supra; Air Terminal, supra; Munoz, supra; Wilson v. Stainback*, 39 Haw. 67 (1951).

The undisputed materials on the record show that the essential elements to maintain a taxpayer's suit were missing. Therefore, the motion for summary judgment was properly granted.

In light of this disposition of plaintiffs' standing, we need not reach the second issue. Accordingly, the trial court's decision is affirmed.

---

[7] We stated: "[T]he competitive bidding procedure violated the very essence of competitive bidding. As such, it provided the opportunity for favoritism, extravagance and improvidence in awarding a public contract." *Id.* at 62.

*Kazuhisa Abe (Abe & Abe* of counsel) for Plaintiffs-Appellants.

*Adrienne Sepaniak (Jane H. Howell* on the brief), Deputy Corporation Counsels, for *Frank F. Fasi, James K. Sakai* and *City and County of Honolulu,* Defendants-Appellees.

*Walter G. Chuck (Huddy T. Lucas* on the brief) for *George Koga, George Akahane, Rudy Pacarro, Toraki Matsumoto, Frank W. C. Loo, Daniel Clement, Jr., Marilyn R. Bornhorst, Wilbert S. Holck and Kekoa D. Kaapu,* in their individual capacities and also as members of the City Council of the City and County of Honolulu; *Walter Heen, James Shigemura, Clesson Y. Chikasuye and Mary George,* Defendants-Appellees.