JAMES H. PFLUEGER, Plaintiff-Appellant, *v.* CITY AND COUNTY OF HONOLULU, a body politic and corporate of the State of Hawaii, and PETER D. LEONG, Director of Finance, City and County of Honolulu, Defendants-Appellees, and J. C. HEARN CO., INC., Intervenor-Appellee

NO. 9176

(CIVIL NO. 73491)

JANUARY 6, 1984

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Plaintiff James H. Pflueger (Pflueger) appeals from the order denying his motion for preliminary injunction and dismissing his complaint against defendants City and County of Honolulu (the

City) and Peter D. Leong (Leong), its Director of Finance. The sole issue on appeal is whether the trial court erred in holding that Pflueger lacked standing to maintain a taxpayer's action challenging the City's award of a golf shop concession to J. C. Hearn Co., Inc. (Hearn). We answer no and affirm.

In August 1982, the City issued its General Instructions to Bidders and solicited bids for the golf shop concession at the Ala Wai Golf Course in Honolulu. The General Instructions stated that prospective bidders must file the Notice of Intention to Bid on or before September 1, 1982. Bidders were further instructed to file, with the Notice of Intention to Bid, the Application to Bid which was to be "answered in full and sworn to before a notary, providing evidence of the following minimum qualifications":

> a. Five years full-time experience in operating a golf shop, sporting goods, or related business.
>
> b. Gross income of not less than $350,000.00 a year within any two of the three immediately preceding calendar years from operating a golf shop, sporting goods, or related business.
>
> c. Evidence of ability to provide a minimum of $150,000.00 in liquid working capital, or a firm commitment from a financial institution doing business in the State of Hawaii for a loan of $150,000.00.

(General Instructions to Bidders, Plaintiff's Exhibit 1.)

The General Instructions further required all bidders to submit their bid proposals on or before 10:30 a.m., September 10, 1982. Hearn was the sole bidder and its bid proposal was accepted by the City as the winning bid.

On September 23, 1982, Pflueger filed a complaint as a taxpayer alleging that the City's imposition of the minimum qualifications was illegal and, consequently, the award of the concession to Hearn would be "null and void." Simultaneously, he moved for a preliminary injunction enjoining the City and Leong from awarding a concession contract to Hearn. The City and Leong answered and, *inter alia,* interposed a defense of lack of standing to maintain the action. Upon its intervention, Hearn raised a similar defense.

On October 21, 1982, the trial court heard Pflueger's motion. On November 17, 1982, the court denied the motion and dismissed the complaint on the ground that Pflueger "lack[ed] the requisite standing to pursue [the] action." Pflueger's timely appeal followed.

I.

In *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980), our supreme court reviewed the Hawaii cases involving taxpayer standing and detailed the requirements imposed on a complainant to maintain a taxpayer's suit. It stated that the early cases of *Wilson v. Lord-Young Engineering Co., Ltd.,* 21 Haw. 87 (1912); *Castle v. Secretary of the Territory,* 16 Haw. 769 (1905); and *Lucas v. American-Hawaiian Engineering and Construction Co., Ltd.,* 16 Haw. 80 (1904), indicated that "it was unnecessary for a plaintiff to show actual damage to himself where consequences of an action are so obvious that damages will be presumed," *Iuli,* 62 Haw. at 183, 613 P.2d at 656, but *Munoz v. Commissioner of Public Lands,* 40 Haw. 675 (1955), more clearly defined the requirements for taxpayer standing. As delineated in *Munoz,* the requisites are: (1) the act complained of must be more than a mere irregularity and in addition to being illegal, "must be such as to imperil the public interest or work public injury," *Iuli,* 62 Haw. at 184, 613 P.2d at 656; (2) the complaint "must allege loss in revenues resulting in an increase in plaintiff's tax burdens or to taxpayers in general," *Id.;* and (3) in the absence of a statute governing taxpayers' suits, a demand upon the proper public officer to take appropriate action must have been made unless the facts alleged show that such demand would have been useless. *Id.*

*Iuli* further held that the foregoing requisites do not apply in cases involving special situations such as *Bulgo v. County of Maui,* 50 Haw. 51, 430 P.2d 321 (1967), and *Federal Electric Corp. v. Fasi,* 56 Haw. 57, 527 P.2d 1284 (1974). *Bulgo* involved a controversy dealing with the fundamental right to vote. In *Federal Electric,* the supreme court "recognized the obvious resulting injury to taxpayers where the bidding procedures used were found to be patently improper and defective" and held that "[t]he deleterious consequences to taxpayers flowing from such a method could be presumed." *Iuli,* 62 Haw. at 186, 613 P.2d at 657.

II.

Appellees contend that Pflueger failed to meet the requisites for taxpayer standing and, therefore, his complaint was properly dismissed. We agree for the reason that the record clearly indicates that

Pflueger failed to meet the requisites delineated in *Iuli*.

First, the complaint alleges that the City's imposition of minimum qualifications upon prospective bidders was illegal. However, it lacks allegations of specific facts showing that the illegal act was "such as to imperil the public interest or work public injury."

Second, Pflueger generally alleges that as a taxpayer he "will suffer great and irreparable damage." However, there is no specific allegation that there will be a loss in revenues resulting in an increase in his tax burdens or to taxpayers in general.

Finally, the complaint is devoid of any allegation that a demand had been made upon Leong or any other City officer to correct the alleged illegal act or that making such demand would have been useless.

### III.

Pflueger asserts that (1) the bidding procedure used by the City violated the provisions of Hawaii Revised Statutes (HRS) § 102-3 (1976) and was "patently improper and defective"; (2) consequently, this case involves a special situation like that in *Federal Electric Corp. v. Fasi, supra;* and (3) "deleterious consequences to taxpayers could be presumed and standing is granted to a taxpayer." Reply Brief at 4. We disagree.

### A.

Hawaii Revised Statutes chapter 102 (1976 & 1982 Supp.) deals with concessions on public property and HRS § 102-3 (1976) provides in pertinent part:

Before any prospective bidder is entitled to submit any bid for the occupancy of any such space, he shall, not less than six calendar days prior to the day designated for opening bids, give written notice to the officer charged with letting the contract of his intention to bid, and the officer shall satisfy himself of the prospective bidder's financial ability, experience and competence to carry out the terms and conditions of any contract that may be awarded. For this purpose, the officer may, in his discretion, require prospective bidders to submit answers, under oath, to questions contained in a form of questionnaire setting forth a

complete statement of the experience, competence and financial standing of the prospective bidders. Whenever it appears to the officer, from answers to the questionnaire or otherwise, that any prospective bidder is not fully qualified and able to carry out the terms and conditions of the contract that may be awarded, the officer shall, after affording the prospective bidder an opportunity to be heard and if still of the opinion that the bidder is not fully qualified to carry out the terms and conditions of the contract that may be awarded, refuse to receive or consider any bid offered by the prospective bidder.

Pflueger presses for a literal construction of HRS § 102-3. He contends that HRS § 102-3 provides for a "two-step process" of first determining who is qualified to bid, and then accepting bids from those found to be qualified bidders. Regarding the first step, he asserts that under HRS § 102-3 any person has the right to "give written notice to the officer charged with letting the contract of his intention to bid" and only thereafter may the officer by questionnaire or otherwise determine whether a "prospective bidder is not fully qualified and able to carry out the terms and conditions of the contract that may be awarded." Pflueger argues that the City improperly "truncated the first step . . . by excluding those potential prospective bidders who [did] not meet the minimum pre-qualifying requirements set forth in the General Instructions." Opening Brief at 11.

A fundamental rule of statutory construction is that "[s]tatutory language must be read in the context of the entire statute and construed in a manner consistent with the purpose of the statute." *State v. Kaneakua*, 61 Haw. 136, 140, 597 P.2d 590, 592 (1979). *See also Hawaii Public Employment Relations Board v. United Public Workers*, 66 Haw. ___, 667 P.2d 783 (1983).

The legislative purpose of HRS chapter 102 is to require a governmental agency "granting a concession or letting out space to do so only to the highest *responsible* competitive bidder." Sen. Stand. Comm. Rep. No. 962, in 1959 Senate Journal, at 953-54 (emphasis added). HRS § 102-9 (1976) expressly provides that the contract "shall be made with the highest *responsible* bidder." (Emphasis added.) Our supreme court has indicated that HRS § 102-3 confers on the contracting officer wide discretion in determining the responsibility of the bidder and such responsibility need not "be judged

18

solely at the point when the contract is in an embryo stage." *Air Terminal Services, Inc. v. Matsuda*, 47 Haw. 499, 527, 393 P.2d 60, 76 (1964). In *Air Terminal*, the determination of the bidder's responsibility or qualification was made after the bids were opened, contrary to the "two-step process" advanced by Pflueger.

Likewise, we cannot perceive why HRS § 102-3 precludes a contracting officer from imposing and publicly disclosing, before notices of intention to bid are received, the minimum requirements regarding experience, competence, and financial standing to qualify responsible bidders. The only caveats are that such minimum requirements be reasonable and not arbitrary and that they be applied uniformly. *See William A. Carey & Co. v. Borough of Fair Lawn*, 37 N.J. Super. 159, 117 A.2d 140 (1955): *Heninger v. City of Akron*, 64 Ohio L. Abs. 417, 112 N.E.2d 77 (1951); *Corcoran v. City of Philadelphia*, 363 Pa. 606, 70 A.2d 621 (1950).

The quest to contract with the highest responsible bidder was subserved by the imposition and disclosure of the prequalification minimum requirements by the City. Assuming the requirements were reasonable,[1] not arbitrary, and applied uniformly, such procedure was of practical benefit to both prospective bidders and the City. The bidding procedure was not "patently improper and defective."

B.

Pflueger contends, however, that (1) HRS § 102-3 assures the prospective bidder "an opportunity to be heard" before the contracting officer disqualifies him as a bidder, (2) the prequalification minimum requirements imposed by the City effectively disqualified prospective bidders without giving them an opportunity to be heard, and (3) consequently, the bid procedure violated the statute.

Our reading of the General Instructions indicates that the provisions of HRS § 102-3 were followed. A prospective bidder was

_____

[1] Pflueger does not challenge the reasonableness of the minimum qualification requirements on this appeal. His stance is that the prequalification of bidders by the City prevented him from submitting his intention to bid thereby denying him the right to a hearing pursuant to Hawaii Revised Statutes § 102-3, by which he could have challenged the qualification requirements.

instructed to file the Notice of Intention to Bid on or before September 1, 1982. He was further instructed to "file, together with the Notice of Intention to Bid, the Application to Bid attached [to the General Instructions] and marked Exhibit A, answered in full and sworn to before a notary, providing evidence" of the minimum qualifications set forth in the General Instructions. The General Instructions advised that the deadline for submission of bid proposals was 10:30 a.m., September 10, 1982.

The General Instructions stated that the Application to Bid had to be "answered in full and sworn to." Unfortunately, since the Application to Bid form is not a part of the record, we do not know its contents. However, any prospective bidder who did not meet the stipulated minimum requirements and deemed them to be unreasonable and arbitrary still could have filed the Application to Bid form indicating his qualifications. He would then have preserved his right to be heard under HRS § 102-3 upon his disqualification. Not having done so, he is estopped and has no cause to complain. *Cf. Munoz v. Commissioner of Public Lands, supra.*

## IV.

Since this case neither met the taxpayer standing requirements delineated in *Iuli* nor involved a special situation like that in *Federal Electric Corp.,* Pflueger failed to establish a case for judicial intervention and the trial court properly denied his motion for preliminary injunction and dismissed his complaint.

Affirmed.

*Neil F. Hulbert (Jerry C. Wilk* with him on the briefs; *Hong, Iwai, Ho* and *Hulbert,* of counsel) for plaintiff-appellant.

*Ronald B. Mun,* Deputy Corporation Counsel, for defendants-appellees.

*Dewey H. Kim, Jr. (Ronald H. W. Lum* and *David L. Fairbanks* with him on the brief; *Goodsill, Anderson, Quinn, & Stifel,* of counsel) for intervenor-appellee.