JOSEPH E. BULGO *v.* THE COUNTY OF MAUI,
A MUNICIPAL CORPORATION.

NO. 4673.

JULY 19, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO,
ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY MARUMOTO, J.

Eddie Tam of Maui died on December 13, 1966. At that time Tam was chairman and executive officer of the board of supervisors of that county, and was serving out his current two-year term expiring on January 3, 1967. He had also been reelected to the same office at the general election held on November 8, and was looking forward to serving another two-year term upon the expiration of the current term.

This case is before us as an aftermath of a controversy generated by the appointment of Tam's successor before the expiration of the term which Tam was serving at the time of his death and the insistence of the successor chairman that his appointment entitled him not only to serve out Tam's current term but also to continue in office throughout the two-year term to which Tam had been reelected.

On December 19, six days after Tam died, the Maui board of supervisors appointed Manuel S. Molina as chairman. At that time the board consisted of eight members, including Molina. The board took this action under R.L.H. 1955, § 144-31, which provides that "Any vacancy occurring in any county office shall be filled by appointment by the board of supervisors * * * ."

On January 3, 1967, an induction ceremony was held to swear in the successful candidates for supervisors at the November 8 election as members of the new board. Molina was one of such successful candidates, but refused to take his oath as a supervisor on the ground that he was a holdover chairman. Thus, only seven supervisors were sworn in. Of these, five had served on the outgoing board and two were new.

The new board felt that it should decide by majority action who should be the chairman for the ensuing two years. However, it did not take any action to appoint a new chairman because it was advised by the county attorney that the statute applicable to the situation was not clear.

On February 3, 1967, the board adopted a resolution requesting the legislature to provide legislation for a special election for county chairman when the chairman-elect dies before taking office or is otherwise unable to take office.

The Fourth State Legislature convened in its general session

on February 15. One of the bills introduced in the session was House Bill No. 4, which provided for the type of legislation desired by the Maui board. As originally drafted, the bill contemplated the election of a county chairman from candidates nominated by political parties. This was amended to provide for special elections consisting of a special primary election and a special general election, in compliance with another resolution which the Maui board adopted on April 21.

The amended bill passed the Senate unanimously. In the House it had the affirmative votes of 50 of the 51 members.

The bill was approved by the Governor on May 5, and became law as Act 47 of the Session Laws of 1967.

Act 47 provides at the outset that if the chairman-elect of a county dies before January 2 following his election, the Governor shall, within 10 days after such chairman-elect's death, issue a proclamation requiring the holding of special elections to fill the vacancy, such special elections to consist of a primary election to be held within 60 days, but no sooner than 45 days, after the chairman-elect's death, and a general election to be held 30 days after the primary election.

This is followed by a provision, hereafter referred to as the challenged provision, which reads:

"* * * The governor shall issue a proclamation within ten days after the approval of this Act requiring special elections to be held if any person elected in the general election of 1966 to the office of chairman of the board of supervisors of a county died before January 2, 1967, and such proclamation shall provide that a primary election be held within sixty days after, but no sooner than forty-five days, after the approval of this Act to nominate candidates for a general election to be held thirty days after the primary election. * * *"

The Act next provides that the tenure of any holdover or temporary chairman then serving shall terminate when the successor chairman shall be so elected and qualified, and that if any special election is held in the county within 120 days, but no sooner than 45 days, after the occurrence of the death or approval

of the Act then such special election shall be held in conjunction with the general election under the Act.

The Act also provides that it shall be applicable to every county other than a county which adopts a charter providing for succession to the office of county chairman in the same contingency, and that expenses of the special elections shall be paid by the county in which they are held.

At the time of approval of the Act, the county of Maui was the only county in which the person elected as county chairman in the 1966 general election had died before January 2, 1967.

So, on May 9, the Governor issued a proclamation for the holding of special elections for Maui county chairman, setting June 24 as the date for the primary election and July 24 as the date for the general election.

On May 19, plaintiff filed a complaint in the second circuit court against the county, seeking an injunction to restrain it from holding the special elections mentioned in the Governor's proclamation, together with a motion for preliminary injunction.

Plaintiff bases his standing to sue on the fact that he pays real property tax to the county of Maui, which tax goes into the county general fund out of which the expenses of the special elections are payable. He claims the requested relief on the ground that the challenged provision is a special law, violative of Article VII, Section 1, of the State constitution, and, unless restrained by the court, defendant will irreparably damage plaintiff by illegally expending funds raised by taxation in holding elections under an invalid statutory provision.

Article VII, Section 1, of the State constitution reads as follows: "Each political subdivision shall have and exercise such powers as shall be conferred under general laws."

Upon the filing of the complaint, the attorney general requested leave to participate as amicus curiae. This request was granted.

The circuit court held a hearing on plaintiff's motion for preliminary injunction on May 23. At the conclusion of this hearing the court announced that it would enjoin defendent, until further order, from expending public funds for the special

elections, other than to retain any temporary clerks who might have been hired. A preliminary injunction to this effect was filed on the morning of May 31. Thereafter, on the same day, the court held a hearing on the complaint, at which the sole issue brought to its attention was the validity of the challenged provision.

The court ruled in plaintiff's favor, holding the challenged provision to be a special law. But before an injunction was issued in accordance with the ruling, defendant requested a rehearing on the grounds that plaintiff had no standing to sue and that the court had no jurisdiction to enjoin the holding of an election for political office.

The court denied the requested rehearing, and issued its injunction on June 13. This appeal is from that injunction.

In seeking reversal, defendant has urged upon this court the same three contentions which it presented to the circuit court, namely, that plaintiff lacks standing to sue; that the court does not have jurisdiction to enjoin the holding of an election for public office; and that the challenged provision does not violate the State constitution.

We hold that plaintiff has a standing to sue in this case. We base this holding on *Castle* v. *Secretary of the Territory,* 16 Haw. 769. Although defendant urges that *Castle,* as a controlling authority on the point at issue, has been eroded by *Wilson* v. *Stainback,* 39 Haw. 67; *Munoz* v. *Commissioner of Public Lands,* 40 Haw. 675; *Air Terminal Services* v. *Matsuda,* 47 Haw. 499, 393 P.2d 60; and *Helela* v. *State,* 49 Haw. 365, 418 P.2d 482, and should be overruled, we see no reason for doing so. Plaintiff has alleged sufficient personal interest in the controversy to entitle him to a day in court.

The question of standing in cases involving constitutional issues is stated in *Baker* v. *Carr,* 369 U.S. 186, 204, as follows:

" * * * Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult

constitutional questions? This is the gist of the question of standing. * * * "

Defendant has stated the question with reference to the issuance of injunction as a jurisdictional matter, as follows: "Does the lower court have jurisdiction to issue an injunction prohibiting the holding of elections for a public office?"

Here again, *Baker* v. *Carr* is instructive. In that case the court analyzed the contention that courts are without jurisdiction to grant relief in reapportionment cases, and concluded that the contention really involved two different matters, namely, the power to grant relief and the appropriateness of the subject matter for judicial consideration. It denominated the latter as the question of justiciability.

We think that defendant's attack on the issuance of injunction in this case involves a question of justiciability rather than that of jurisdiction.

The prevailing rule is that courts will not enjoin the holding of elections for public offices. Decisions supporting this rule are generally couched in terms of lack of jurisdiction. However, that was before the discerning analysis in *Baker* v. *Carr*. We think the real basis for the rule is the inappropriateness of judicial intrusion into matters which concern the political branch of government.

Plaintiff concedes the existence of the prevailing rule. But he asserts that the rule requires reappraisal in the light of the recent flood of reapportionment cases which "has swept away the doctrinaire view that all 'so-called' political questions are beyond the reach of the Court."

The reapportionment cases do not have the sweeping compass which plaintiff asserts. They do not provide a carte blanche license for the judiciary to concern itself with all political questions. As a matter of fact, in *Baker* v. *Carr*, which opened the floodgates to the later reapportionment cases, the court made it clear that it was not deciding a political question. It stated that "the mere fact that the suit seeks protection of a political right does not mean it presents a political question." The holding in the case was that a claim of denial of the constitutional right of

equal protection is justiciable and that the right to relief under the equal protection clause is not diminished by the fact that the dicrimination relates to political rights.

The court further stated in *Baker* v. *Carr* that the "nonjusticiability of a political question is primarily a function of the separation of powers." From this statement and the discussion of the political question doctrine which follows the statement, we conclude that *Baker* v. *Carr* and other reapportionment cases have no bearing on the rule which restrains the judiciary from enjoining the holding of elections for public offices.

We do not think that the instant case presents a situation which calls for a departure from the prevailing rule, and hold that the circuit court erred in issuing its injunction.

This holding is sufficient in itself for reversal of the circuit court judgment. However, the primary issue argued in this court, as it was in the circuit court, is the validity of the challenged provision under Article VII, Section 1, of the State constitution. It is in the public interest for this court to resolve this issue. Accordingly, we will proceed with its consideration. A statement of our conclusion on this issue will not be dictum, although the appeal may be disposed of by our holding regarding the issuance of injunction. It is stated in *Woods* v. *Interstate Realty Co.*, 337 U.S. 535, 537, "where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*."

On the issue of the validity of the challenged provision, plaintiff's position is clear and simple. It is as follows: that Article VII, Section 1, of the State constitution mandates the legislature to legislate on county matters by general laws; that the challenged provision, although it is couched in general language and does not mention any county by name, is a special law because it applies to Maui only and cannot possibly apply to any other county.

Defendant, on the other hand, contends that the mentioned constitutional provision makes only a vague reference to general laws and does not specifically prohibit special laws; that if it mandates general laws, such mandate is not necessarily violated by laws which in their operation happen to apply to one county or city or to a particular situation; and that if it prohibits special

laws, it does so only with respect to laws which confer powers but not with respect to laws which impose obligations.

The main thrust of the contention of the amicus is that Act 47 is a general law; that the challenged provision must be read in its context; and that if it is so read, it broadens, rather than restricts, the applicable scope of the Act.

As we read the constitutional provision in question, we see nothing vague in its language. It requires the legislature to confer powers upon the counties only by general laws. This has been the consistent interpretation of the attorney general, and rightly so.

We need not enter into a detailed discussion as to whether Act 47 confers a power or imposes a duty because the issue as to the validity of the challenged provision can be decided by meeting head on the question as to whether the provision constitutes a general law or a special law. However, the issue will be discussed on the premise that the Act confers a power.

In its broadest sense, the term "general laws," as used in Article VII, Section 1, of the State constitution, denotes laws which apply uniformly throughout all political subdivisions of the State. But a law may apply to less than all of the political subdivisions and still be a general law, if it applies uniformly to a class of political subdivisions, which, considering the purpose of the legislation, are distinguished by sufficiently significant characteristics to make them a class by themselves. *Van Riper* v. *Parsons*, 40 N.J.L. 123; *Jones* v. *Power County*, 27 Idaho 656, 150 P. 35; 50 Am. Jur., Statutes, § 6; 82 C.J.S., *Statutes*, § 162; *Proceedings of the Constitutional Convention of Hawaii 1950*, vol. II, p. 529.

Act 47 applies to a class of political subdivisions consisting of every county other than a county which adopts a charter providing for succession to the office of county chairman when a chairman-elect dies before January 2 following his election. The legislative purpose in enacting the Act was to provide for an orderly succession to the office of county chairman in the contingency mentioned in the Act. *Fourth State Legislature, General Session*

*1967, House of Representatives, Standing Committee Report No. 10.*

The Act has not been attacked as a whole. Only the challenged provision is under attack. The circuit court clearly stated that its decision is limited in its application "only to the sentence under attack and not to Act 47 as a whole."

Under the mentioned constitutional provision, the thing that is required to have uniform application is the power given to, and exercised by, political subdivisions.

The power given by Act 47 is the power to hold special elections for successor county chairman where the chairman-elect dies before January 2 following his election. The Act confers this power upon every county in which the contingency occurs, so long as the county is within the class of political subdivisions encompassed by it.

The Act provides for the timing of the special elections in three different situations. The challenged provision covers one situation. Such timing provision does not confer any power and relates only to the exercise of the power that has been granted.

The challenged provision does not give the county of Maui any power which is different from that which the Act gives to the counties of Hawaii and Kauai. It neither favors nor discriminates against Maui. The contingency contemplated in the Act now exists on Maui. The provision brings Maui within the scope of the Act in the present situation.

We hold that Act 47, including the challenged provision, is a general law and complies with Article VII, Section 1, of the State constitution.

Reversed and remanded, with direction to the circuit court of the second circuit to enter an order setting aside the injunction filed on June 13, 1967, and setting August 5, 1967, as the date of the special primary election, and September 2, 1967, as the date of the special general election, to elect a chairman of the board of supervisors of the county of Maui pursuant to Act 47 of the Session Laws of Hawaii 1967.

Mandate will be issued forthwith under Rule 10(a) of the rules of this court.

*Kase Higa,* County Attorney, County of Maui, for defendant-appellant.

*Frank D. Padgett (Padgett & Greeley* of counsel) for plaintiff-appellee.

*Bertram T. Kanbara,* Deputy Attorney General, for the Attorney General, amicus curiae.