PER CURIAM.
 

 These appeals arise from challenges to the attempts to fill the district 1 seat on the Jefferson County Commission left vacant when Commissioner Larry Langford was elected mayor of the City of Birmingham in October 2007. The trial court held that the vacant seat was to be filled by a special election rather than by gubernatorial appointment. For the reasons stated herein, we reverse the trial court’s judgment.
 

 I. Facts, Procedural Background, and Applicable Statutes
 

 On October 9, 2007, Larry Langford, the member of the Jefferson County Commission representing district 1, was elected mayor of the City of Birmingham. He thereafter resigned his seat on the Jefferson County Commission. On October 29,
 
 *829
 
 2007, the Jefferson County Election Commission, pursuant to Act No. 784, Ala. Acts 1977,
 
 [1]
 
 adopted a resolution calling for a special election to fill the seat vacated by Langford. The resolution set the special election for February 5, 2008 — the date of Alabama’s presidential-preference primaries. Fred L. Plump, George F. Bowman, and William A. Bell, Sr., were among those who qualified to run for the district 1 seat on the county commission.
 

 On November 21, 2007, Governor Bob Riley appointed George F. Bowman to fill the vacant district 1 seat on the Jefferson County Commission. The Governor’s appointment was made pursuant to a general law, § 11 — 8—1(b), Ala.Code 1975.
 
 [2]
 

 On January 31, 2008, Patricia Working and Rick Erdemir filed a complaint for declaratory relief in the Jefferson Circuit Court, naming as defendants the Jefferson County Election Commission and its individual members, namely Jefferson County Probate Judge Alan King, Jefferson County Sheriff Mike Hale, and Jefferson County Circuit Clerk Anne-Marie Adams. Among other things, they alleged that they were residents and taxpayers in Jefferson County and that the special election was unauthorized and unconstitutional because, they said, Act No. 784, Aa. Acts 1977, violated § 105 of the Aabama Constitution of 1901,
 
 [3]
 
 and that, even if Act No. 784 was not unconstitutional and authorized the special election, the date set by the Election Commission for the special election was incorrect. Accompanying the complaint were an application for a temporary restraining order and a motion for a preliminary injunction.
 

 On February 1, 2008, the Jefferson Circuit Court conducted an expedited hearing
 
 *830
 
 in which it noted the absence of potentially-interested parties and issued an order holding that it would not have subject-matter jurisdiction until the attorney general was served with a copy of the complaint pursuant to Ala.Code 1975, § 6-6-227. It further stated that the matter would be held under submission until the plaintiffs had complied with § 6-6-227. Subsequent to the entry of that order, the attorney general was served with a copy of the complaint and filed an answer stating that he was entitled to be heard on the issue of the constitutionality of Act No. 784, and that because Act No. 784 is unconstitutional, the circuit court should enjoin the Election Commission from canvassing the votes and certifying the results of the special election. In addition, on February 6, 2008, Plump filed a motion to intervene as a defendant, which the court later granted.
 
 [4]
 

 The special election was held on February 5, 2008. On February 12, Floyd McGinnis filed a “Joinder of Verified Complaint” and, with Working and Erdemir, amended the complaint to add Bell as a defendant. McGinnis, Working, and Erde-mir (collectively referred to as “the Working plaintiffs”) each filed a verification in support of the amended complaint.
 

 On February 13, 2008, the Working plaintiffs filed a notice of appeal to this Court from the trial court’s February 1, 2008, order and, specifically, its effective denial of a temporary restraining order and a preliminary injunction by holding the case “under submission.” On February 14, 2008, this Court granted an emergency motion filed by the Working plaintiffs, enjoining the Election Commission from certifying the results of the special election until further order of this Court. On February 20, 2008, this Court issued an order noting that it appeared the statutory notice requirements pertaining to the attorney general had been met, remanding the cause to the trial court for a ruling on the merits of the Working plaintiffs’ claims, and maintaining in place the injunction prohibiting the certification of the results of the February 5 special election pending further order of this Court. (Case no. 1070693.)
 

 On February 21, 2008, the defendants moved to dismiss the action on the bases, among others, that the Working plaintiffs lacked standing to pursue their claims because, as was undisputed, Working and Erdemir did not actually reside in district 1 of Jefferson County and McGinnis had not suffered a sufficient, particularized injury. On February 27, 2008, Plump filed an answer to the complaint and a third-party complaint asserting a quo warranto action as a relator for the State against Bowman.
 
 See
 
 Ma.Code 1975, § 6-6-597.
 

 On February 28, 2008, Governor Riley filed a motion, which was later granted, to intervene as a plaintiff. Aso on February 28, the Working plaintiffs filed a second amended complaint, among other things, adding a claim that the Election Commission was required by Act No. 2007-488 to hold an election at the November 2008 general election to fill the district 1 vacancy and that its refusal to do so was a violation of plaintiff McGinnis’s right to vote in such an election.
 

 On March 6, 2008, Bell filed, and on March 9, 2008, the trial court granted, a motion to join and to amend Plump’s third-party quo warranto complaint against Bowman. The amended third-party com
 
 *831
 
 plaint alleged that Bell was entitled to hold the office of County Commissioner for district 1 based on the result of the special election and that Bowman was unlawfully holding that office. Specifically, Bell and Plump alleged:
 

 “Governor Riley did not have the authority to appoint George Bowman to the District 1 seat because it is clear that a general state statute, Act 2007-488 codified at § 11 — 3—1(b), that begins ‘Unless a local law authorizes a special election,’ allows local laws on the same subject to coexist without violating § 105 of the Alabama Constitution.
 
 Baldwin County v. Jenkins,
 
 494 So.2d 584 (Ala.1986).”
 

 After conducting a hearing, the trial court issued a final judgment. In its judgment, the trial court held that the Working plaintiffs lacked standing to pursue their claims. As to the merits of the litigation, the trial court determined that the local law on which the special election was based, Act No. 784, Ala. Acts 1977, did not conflict with the general law, § 11 — 3—1(b), and therefore did not violate § 105 of the Alabama Constitution of 1901, because of the proviso at the beginning of § 11-3-1 (b) allowing local laws to authorize special elections to fill vacancies on county commissions. Finally, the trial court held that the Election Commission had set the special election for the correct day.
 

 Consistent with the foregoing determinations, the trial court specifically ruled that Governor Riley’s appointment of Bowman to the district 1 seat for the Jefferson County Commission was unauthorized and that, when the final results of the election of February 5, 2008, are certified by the Election Commission, the winner of the election will be entitled to hold the office of Jefferson County commissioner for district 1.
 

 The Working plaintiffs, the Governor, and Bowman each appeal.
 

 II. Subject-Matter Jurisdiction
 

 We are presented with two issues pertaining to subject-matter jurisdiction. These include the standing of the Working plaintiffs to pursue their claims and the potential effect of § 17-16-44, Ala.Code 1975.
 

 A. The Standing of the Working Plaintiffs
 

 In the trial court, the Working plaintiffs asserted that they have standing to bring their claims in this case based on their status as residents and taxpayers of Jefferson County whose taxes go to the general fund of the County.
 
 [5]
 
 They alleged that their status in this regard gives them standing to challenge the expenditure of moneys from the general fund for conducting an election not authorized by law.
 

 In their February 21 motion to dismiss, the Election Commission and Sheriff Hale argued to the trial court that the Working plaintiffs did not have standing to pursue their claims because (1) Working and Er-demir were not residents or voters of district 1 and (2) McGinnis, although a district 1 voter, had “not stated or shown with particularity the injury in fact necessary to grant him standing to challenge the constitutionality of 1977 Ala. Act No. 784.”
 
 [6]
 
 The
 
 *832
 
 motion to dismiss did not specifically address the Working plaintiffs’ status as taxpayers of Jefferson County or whether that status contributed to their standing to obtain the relief they sought.
 

 In proposed conclusions of law submitted to the trial court in preparation for the final hearing and in arguments presented at that hearing, the Working plaintiffs reasserted their position that their status, particularly as taxpayers, gave them standing to pursue their claims. As noted, however, in its final judgment, the trial court ruled against the Working plaintiffs on the issue of standing. Specifically, it held that because neither Working nor Erdemir were residents of district 1 they did not suffer a legal injury as a result of the special election. Among other things, it agreed with the Election Commission and Sheriff Hale that McGinnis lacked standing because he “had not stated or shown with particularity [an] injury in fact.” The trial court did not directly address the issue of taxpayer standing.
 

 On appeal, the Working plaintiffs again assert their status as residents and taxpayers of Jefferson County and again contend that that status gives them standing to pursue this case. In response, the Election Commission and Sheriff Hale urge this Court to uphold the trial court’s ruling as to standing on the same grounds cited in the trial court’s opinion; they make no substantive argument as to the issue of taxpayer standing.
 

 We note at the outset of our analysis that the fact that neither the defendants nor the trial court has directly addressed the Working plaintiffs’ argument as to the issue of taxpayer standing does not provide us with a reason to conclude, by default, that such standing exists. Standing is a component of a court’s subject-matter jurisdiction and, as such, is not subject to waiver.
 
 See Waite v. Waite,
 
 959 So.2d 610, 613 (Ala.2006);
 
 RLI Ins. Co. v. MLK Ave. Redev. Corp.,
 
 925 So.2d 914, 918 (Ala.2005).
 
 See also United States v. Hays,
 
 515 U.S. 737, 742, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).
 

 Whether a party has standing “turns on ‘whether the party has been injured in fact and whether the injury is to a
 
 legally protected right
 
 ’ ” so as “ ‘to ensure that
 
 he will vigorously present his case.’
 
 ”
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d 1025, 1027-28 (Ala.1999). This Court has said that a party has standing where, among other things, there is “an actual, concrete and particularized ‘injury in fact’ — ‘an invasion of a legally protected interest.’ ”
 
 Alabama Alcoholic Beverage Control Bd. v. Henri-Duval Winery, LLC,
 
 890 So.2d 70, 74 (Ala.2003) (relied upon in
 
 Town of Cedar Bluff v. Citizens Caring for Children,
 
 904 So.2d 1253 (Ala.2004)). We conclude that the Working plaintiffs had standing to bring their claims.
 

 “In a long line of decisions this Court has recognized the right of a taxpayer to challenge, either as unconstitutional or as not conforming to statute, the expenditure of public funds by county officers.”
 
 Zeig
 
 
 *833
 

 ler v. Baker,
 
 344 So.2d 761, 763 (Ala.1977) (quoted with approval in
 
 Henson v. HealthSouth Med. Ctr.,
 
 891 So.2d 863, 866 (Ala.2004)).
 
 See also Alabama State Florists Ass’n, Inc. v. Lee County Hosp. Bd.,
 
 479 So.2d 720, 722 (Ala.1985);
 
 Court of County Revenues for Lawrence County v. Richardson,
 
 252 Ala. 403, 412, 41 So.2d 749, 754 (1949);
 
 Reynolds v. Collier,
 
 204 Ala. 38, 39, 85 So. 465, 466 (1920). In
 
 Broxton v. Siegelman,
 
 861 So.2d 376 (Ala.2003), this Court stated:
 

 “[T]he right of a taxpayer to sue ‘ “ ⅛ based upon the taxpayer’s equitable ownership of such funds and their liability to replenish the public treasury for the deficiency which would be caused by the misappropriation.’ ” ’
 
 Hunt v. Window,
 
 604 So.2d [395] at 396-97 [(Ala. 1992)] (quoting
 
 Zeigler v. Baker,
 
 344 So.2d 761, 763 (Ala.1977), quoting in turn,
 
 Fergus v. Russel,
 
 270 Ill. 304, 314, 110 N.E. 130, 135 (1915)).”
 

 861 So.2d at 385 (emphasis omitted).
 

 The standing of taxpayers to challenge the expenditure of public funds extends to funds expended for holding elections not authorized by law. In
 
 City of Mobile v. Mobile Electric Co.,
 
 203 Ala. 574, 578, 84 So. 816, 819 (1919), the Supreme Court held that an election to adopt or reject a municipal ordinance would be improper and that “the complainant, as a taxpayer, had the right to enjoin the same.”
 
 See also Dennis v. Prather,
 
 212 Ala. 449, 103 So. 59 (1925) (citing
 
 City of Mobile
 
 with approval). We also take note of the result in
 
 Petree v. McMurray,
 
 210 Ala. 639, 98 So. 782 (1923), a case in which an appointed county superintendent of education challenged an election that was to be held pursuant to a local law that he contended was in violation of Ala. Const. 1901, § 175. The Court affirmed the trial court’s order overruling a demurrer
 
 [7]
 
 to the complaint, which contained the following allegations:
 

 “[Notwithstanding the invalidity of said act, respondents, acting as an election commission, [were] threatening to and [were] about to advertise and call a special election, to appoint inspectors, clerks, etc., in the various voting precincts, and to purchase election supplies, all of which [was] without warrant of law, and it [was] alleged that the pay vouchers for the proposed election officers and the purchase of supplies [would] constitute illegal claims and expenses against the county, to the detriment of [the plaintiff] as a taxpayer; and that the holding of said election [would] tend to interfere with the proper discharge of the duties of his office.”
 

 210 Ala. at 640, 98 So. at 782.
 

 Other jurisdictions also hold that a taxpayer has standing to challenge an election paid for with tax funds. For example, in
 
 Bulgo v. Maui County,
 
 50 Haw. 51, 430 P.2d 321 (1967), a taxpayer challenged the holding of an election that was based on a newly enacted law providing for a special election to fill the term of a county chairman-elect who dies before assuming office. Describing the taxpayer’s contention with regard to his standing to challenge the election, the Supreme Court of Hawaii wrote:
 

 “Plaintiff bases his standing to sue on the fact that he pays real property tax to the county of Maui, which tax goes into the county general fund out of which the expenses of the special elections are payable. He claims the requested relief on the ground that the challenged provi
 
 *834
 
 sion is a special law, violative of Article VII, Section 1, of the State constitution, and, unless restrained by the court, defendant will irreparably damage plaintiff by illegally expending funds raised by taxation in holding elections under an invalid statutory provision.”
 

 Bulgo,
 
 50 Haw. at 54, 430 P.2d at 324. The Court held that this was sufficient to confer standing on the plaintiff to pursue his challenge of the election:
 

 “We hold that plaintiff has a standing to sue in this case. We base this holding on
 
 Castle v. Secretary of the Territory,
 
 16 Haw. 769 [(1905)]. Although defendant urges that
 
 Castle,
 
 as a controlling authority on the point at issue, has been eroded by
 
 Wilson v. Stainback,
 
 39 Haw. 67 [(1951)];
 
 Munoz v. Commissioner of Public Lands,
 
 40 Haw. 675 [(1951)];
 
 Air Terminal Services v. Matsuda,
 
 47 Haw. 499, 393 P.2d 60 [(1964)]; and
 
 Helela v. State,
 
 49 Haw. 365, 418 P.2d 482 [(1966)], and should be overruled, we see no reason for doing so. Plaintiff has alleged sufficient personal interest in the controversy to entitle him to a day in court.”
 

 50 Haw. at 55, 430 P.2d at 324.
 
 See also, e.g., Board of Supervisors of Elections of Anne Arundel County v. Smallwood,
 
 327 Md. 220, 233 n. 7, 608 A.2d 1222, 1228 n. 7 (1992) (“[I]ndividual taxpayers in each county also contested the proposed amendments’ validity. Individual taxpayers have standing to sue for an injunction against submitting a proposal to the electorate; otherwise, they would be ‘put to wrongful expense for the publication of the referendum and the printing of it on the ballots of the next general election.’ ”).
 
 [8]
 

 In the present case, it is clear that Jefferson County incurred costs in holding the special election for the district 1 coun
 
 *835
 
 ty commission seat that it otherwise would not have incurred in administering the presidential-preference primary election on February 5, 2008. Section 17-16-4, Ala.Code 1975, provides that “[t]he State of Alabama shall reimburse a county for all sums expended by the county in payment of expenses incurred in holding and conducting an election in which
 
 only
 
 candidates for federal or state offices are nominated or federal or state officials are elected.”
 
 [9]
 
 (Emphasis added.) Section 17 — 16— 2 defines, but also limits, the “expenses” for which the State must reimburse counties:
 

 “As used in this chapter, the term ‘expenses’ shall include the following items, and no other:
 

 “(1) The per diem and mileage provided by law for election officials.
 

 “(2) The per diem provided by law for the clerk or other official acting in his or her stead for handling absentee ballots.
 

 “(3) The costs of ballots, supplies, and other materials required by law to be furnished to election officials and certified by the judge of probate as chief election official of the county. In those counties where electronic voting machines are used, such voting equipment shall not be considered as ballots, supplies, or materials, as herein used.
 

 “(4) The costs of absentee ballots, supplies, and other materials required by law to be furnished to the official handling absentee ballots.
 

 “(5) The cost of preparing and furnishing the lists of qualified electors to the election officials as required by law.”
 

 Ala.Code 1975, § 17-16-2.
 

 Even as to the specific “expenses” listed in § 17-16-2, however, § 17-16^1 does not obligate the State to reimburse a county for “all sums” expended by the county if the election is one in which candidates or officials for
 
 other than
 
 federal or state offices are to be nominated or elected. As to an election “in which candidates for both federal or state and county offices” are nominated or elected, § 17-16-3 governs. It provides that the State of Alabama is required to reimburse the county only “for one half of all sums expended by the county in payment of expenses incurred in holding and conducting” the election. Ala. Code 1975, § 17-16-3.
 
 [10]
 

 
 *836
 
 Finally, we note that, consistent with all of the above-discussed statutory provisions from Chapter 16, the parties stipulated as follows to the trial court:
 

 “46. Jefferson County’s General Fund is used to pay persons to administer elections at the direction of the Jefferson County Election Commission, including the February 5, 2008, presidential preference primary election. As a result of the Election Commission’s resolving to conduct an election, monies appropriated from Jefferson County’s General Fund pay for the printing of ballots used during the February 5, 2008, presidential preference primary election.”
 

 As previously noted, this Court has stated that standing “turns on ‘whether the party has been injured in fact and whether the injury is to a
 
 legally -protected, right.’
 
 ”
 
 State v. Property at 2018 Rainbow Drive,
 
 740 So.2d at 1027. On the basis of the foregoing, we conclude that the Working plaintiffs had standing to bring their claims.
 

 B. The Effect of § 17-16-⅛⅛
 

 Although the trial court did not address the issue, Plump argues on appeal that the trial court lacked subject-matter jurisdiction over all but his and Bell’s third-party quo warranto action against Bowman on the basis of Ala.Code 1975, § 17-16-44. That statute provides:
 

 “No jurisdiction exists in or shall be exercised by any judge or court to entertain any proceeding for ascertaining the legality, conduct, or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process, or order from any judge or court, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person. If any judge or other officer hereafter undertakes to fine or in any wise deal with any person for disobeying any such prohibited injunction, process, or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the Supreme Court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days.”
 

 We disagree.
 

 We begin by noting that § 17-16-40 prescribes grounds for an election contest
 
 *837
 
 that go to the manner in which the election was conducted and the eligibility of a candidate to hold the office at issue, and, in those respects, whether the particular outcome of the election was lawful or correct. Those grounds are as follows:
 

 “(1) Malconduct, fraud, or corruption on the part of any inspector, clerk, returning officer, canvassing board, or other person.
 

 “(2) When the person whose election to office is contested was not eligible thereto at the time of such election.
 

 “(3) On account of illegal votes.
 

 “(4) On account of the rejection of legal votes.
 

 “(5) Offers to bribe, bribery, intimidation, or other malconduct calculated to prevent a fair, free, and full exercise of the elective franchise.
 

 “(6) The results of a recount conducted under Section 17-16-20 name as a winner a person other than the person initially certified.”
 

 § 17-16-40, Ala.Code 1975.
 

 The present challenge to the February 5 election does not fall within the scope of an election-contest statute as suggested by the grounds of contest outlined in § 17-16-40. This conclusion comports with even more fundamental principles regarding the jurisdiction of our circuit courts as courts of general jurisdiction and of equity. In
 
 King v. Campbell,
 
 988 So.2d 969 (Ala.2007), this Court relied upon those fundamental principles to explain the jurisdiction of our circuit courts in relation to election challenges:
 

 “Article VI, § 142(b), Ala. Const. 1901 (Off.Recomp.), provides:
 

 “ ‘(b) The circuit court shall exercise general jurisdiction in all cases except as may otherwise be provided by law. The circuit court may be authorized by law to review decisions of state administrative agencies and decisions of inferior courts. It shall have authority to issue such writs as may be necessary or appropriate to effectuate its powers, and shall have such other powers as may be provided by law.’
 

 “.... The legislature has restricted the jurisdiction of the circuit courts by enacting § 17-16-44. ... In
 
 Dennis v. Prather,
 
 212 Ala. 449, 103 So. 59 (1925), this Court construed a predecessor statute to § 17-16-44. This Court noted:
 

 “ ‘The general rule without question is that courts of equity will not interfere by injunction with the holding of elections political in character, nor take jurisdiction of a contest after the election is held.
 
 But this court is committed to the proposition that equity will interfere by injunction to restrain elections not authorized by law. It will also restrain the usurpation of office, or the assumption of functions of office where no lawful office exists. ’
 

 “212 Ala. at 452, 103 So. at 61-62 (emphasis added). Speaking to the predecessor to
 
 § 17-16-jJp, the Dennis
 
 Court stated:
 

 “
 
 ‘Statutes restricting the jurisdiction of courts of equity,
 
 as defined at common law, and reiterated by statute in Alabama,
 
 should be strictly construed.
 
 Construing this statute as a whole, it appears, broadly speaking, to cover cases inquiring into the validity of elections theretofore held — a proceeding in the nature of a contest of an election, whether the legality, conduct or results of the election be the point of attack.
 
 We doubt if it would include a case of injunction against the exercise of any form of official power, derived through or by virtue of an election not authorized by law and
 
 
 *838
 

 therefore wholly void.
 
 The equity jurisdiction in such case does not rest so much upon matters going to the conduct of the election, but upon the usurpation or abuse of official power under color of a void election.’
 

 “212 Ala. at 452-53, 103 So. at 62 (emphasis added).”
 

 988 So.2d at 977 (some emphasis omitted). Thus, we concluded in
 
 King,
 
 “litigation challenging the consequences of a void election does not come within the sweep of the limitation on subject-matter jurisdiction in § 17-16-44.” 988 So.2d at 978.
 

 This principle controls in the present case. The Working plaintiffs, the Governor, and Bowman make no challenge to the manner in which the February 5 special election was conducted or the particular results of that election; the challenge here is to the very holding of the election. It is a challenge to the election as one “not authorized by law and therefore wholly void.” The jurisdictional limitations imposed by § 17-16-44 therefore are not applicable.
 

 III. The Validity of the February 5 Special Election
 

 We turn now to the substantive question presented, the validity of the February 5 special election. Two issues are presented by the parties for our consideration: (1) whether Act No. 784, Ala. Acts 1977, upon which the election was based, is unconstitutional in light of the prohibition of certain local laws imposed by § 105 of the Alabama Constitution of 1901, and (2) whether Act No. 784 has been repealed by § 11 — 3—1(f). We first turn our attention to the latter issue because an affirmative response to it will make it unnecessary for us to address the constitutionality of a legislative enactment.
 
 See generally, e.g., Lowe v. Fulford,
 
 442 So.2d 29, 33 (Ala.1983) (“ ‘Generally courts are reluctant to reach constitutional questions, and should not do so, if the merits of the case can be settled on non-constitutional grounds.
 
 White v. U.S. Pipe & Foundry Co.,
 
 646 F.2d 203 (5th Cir.1981).’ ” (quoting trial court’s order));
 
 Becton v. Rhone-Poulenc, Inc.,
 
 706 So.2d 1134, 1142 (Ala.1997) (explaining that “because we hold that [the federal statute] does not apply under the facts of this case, it is unnecessary for us to determine any constitutional issue concerning [that statute’s] preemption of Alabama’s applicable statute of limitations”).
 

 We begin our analysis with a brief examination of the decision of this Court in
 
 Stokes v. Noonan,
 
 534 So.2d 237 (Ala.1988). At issue in
 
 Stokes
 
 was § 11-3-6, the precursor statute to § ll-3-l(b), the general law at issue in the present case. At the time
 
 Stokes
 
 was decided, however, § 11-3-6 contained no exception for local laws. It stated simply as follows with respect to a vacancy in a county commission seat:
 

 “In case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed.”
 

 This general law was in place when the legislature enacted Act No. 85-237, Ala. Acts 1985. Similar to the local law at issue here, Act No. 85-237 was a local law intended to provide for filling vacancies on a county commission of one particular county, specifically Mobile County, by a special election. Addressing the constitutionality of Act No. 85-237, the
 
 Stokes
 
 Court reasoned that
 

 “the legislature, by enacting a general law containing no ... provision or exception for contrary local laws, thereby intended that general law to be primary and the subject subsumed entirely by the general law. In that situation, § 105
 
 *839
 
 does operate to prohibit the enactment of contrary local laws.”
 

 Stokes,
 
 534 So.2d at 239 (quoting
 
 Baldwin County v. Jenkins,
 
 494 So.2d 584, 587 (Ala.1986)(emphasis omitted)). On this basis, the
 
 Stokes
 
 Court declared Act No. 85-237 to be unconstitutional.
 

 Riley v. Kennedy,
 
 928 So.2d 1013 (Ala.2005), dealt with the same local law as did
 
 Stokes,
 
 Act No. 85-237. By the time this Court decided
 
 Riley,
 
 however, the legislature had amended § 11-3-6 to add the beginning proviso “[ujnless a local law authorizes a special election.” Act No. 2004-455. The plaintiffs in
 
 Riley
 
 argued that that made all the difference:
 

 “Kennedy argues that Act No. 2004-455, which amended § 11-3-6, Ala.Code 1975, manifests an intent by the legislature to cure the impediment to the enforceability this Court found as to Act No. 85-237 and to now give effect to that Act and that, consequently, a special election is the proper procedure by which to fill the vacancy created on the Mobile County Commission by Jones’s resignation.”
 

 928 So.2d at 1016. The Court in
 
 Riley
 
 disagreed:
 

 “This Court has consistently held that
 

 “ ‘ “statutes are to be prospective only, unless clearly indicated by the legislature. Retrospective legislation is not favored by the courts, and statutes will not be construed as retrospective unless the language used in the enactment of the statute is so clear that there is no other possible construction.
 
 Sutherland Stat. Const.,
 
 § 41.04 (4th ed 1984).” ’ ”
 

 Riley,
 
 928 So.2d at 1016. The Court continued:
 

 “Here, the plain language in Act No. 2004-455, amending § 11-3-6, Ala.Code 1975, provides for
 
 prospective application only,
 
 and that language must be given effect according to its terms.
 
 Nothing in the language in Act No. 200⅛-⅛.55 demonstrates an intent by the legislature that the amendment of § 11-3-6 apply retroactively.
 
 The argument that Act No. 2004-455 applies prospectively only is further supported by the preamble of the Act, which provides that the purpose of the Act is ‘[t]o amend Section 11-3-6 of the Code of Alabama 1975, relating to county commissions, to authorize the Legislature
 
 ... to provide
 
 for the manner of filling vacancies in the office of the county commission.’ (Emphasis added.) The language
 
 ‘to authorize the Legislature ... to provide
 
 ’ the means by which vacancies on the county commission are to be filled further indicates an intention by the legislature that the Act is to be prospectively applied. Therefore, we hold that Act No. 2004-455 applies prospectively only; consequently, Governor Riley is authorized to fill the vacancy on the Mobile County Commission by appointment.”
 

 Riley,
 
 928 So.2d at 1017 (most emphasis added; some emphasis omitted).
 

 The Election Commission and Sheriff Hale argue that the issue in
 
 Riley
 
 was whether Act No. 2004-455 could “revive” a local act, Act No. 85-237, which previously had been declared unconstitutional in
 
 Stokes.
 
 Act No. 784, they point out, was at no time before the enactment of Act No. 2004-455 judicially declared to be unconstitutional. “It follows,” according to the Election Commission and Sheriff Hale, “that Act No. 77-784 does
 
 not
 
 need to be revived. Therefore, the issue before this Court in
 
 Riley v. Kennedy
 
 is not present in this case and the
 
 Riley v. Kennedy
 
 decision is inapposite to this case.”
 

 The reasoning unanimously adopted by this Court in
 
 Riley
 
 does not admit of the distinction urged by the appellees. Again,
 
 *840
 
 as this Court stated, “the plain language in Act No. 2004-455 ... provides for prospective application only”; “[njothing in the language in Act No. 2004-455 demonstrates an intent by the legislature that the amendment [to the general law] apply retroactively,” and “the preamble of the Act ... provides that the purpose of the Act is ‘...
 
 to authorize
 
 the Legislature by local law
 
 to provide
 
 ’ ” for exceptions to the general law. 928 So.2d at 1017.
 

 Thus, in
 
 Riley,
 
 the introductory proviso in § 11-3-6 — “[u]nless a local law authorizes a special election” — was interpreted to apply only to local laws enacted
 
 after
 
 Act No. 2004-455. Approximately two years after this Court’s decision in
 
 Riley
 
 was issued, the legislature, in Act No. 2007-488, reenacted the same language — including the aforesaid proviso — which had been interpreted in
 
 Riley.
 
 It did so without choosing to make any changes to it (other than to renumber it as § 11 — 3—1(b)). The Working plaintiffs, the Governor, and Bowman argue that the meaning of this language was decided in
 
 Riley
 
 and that this Court has now but to apply that meaning in the present case. We agree. Other than the renumbering of the section in which this language appears, there has been no change in this language since the decision in
 
 Riley.
 

 Our agreement with the appellants’ position is buttressed by long-established and fundamental principles of statutory construction.
 

 “[T]here exists, and has long existed, in this state, a principle that when the legislature readopts a code section, or incorporates it into a subsequent Code, prior decisions of this court permeate the statute, and it is presumed that the legislature deliberately adopted the statute with knowledge of this court’s interpretation thereof.”
 

 Edgehill Corp. v. Hutchens,
 
 282 Ala. 492, 495-96, 213 So.2d 225, 227-28 (1968).
 
 See also, e.g., Galloway Coal Co. v. Stanford,
 
 215 Ala. 79, 81, 109 So. 377, 379 (1926) (“ ‘It is a settled rule, that, in the adoption of the Code, the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.’
 
 Morrison v. Stevenson,
 
 69 Ala. 448, [450 (1881)].”); 2B Norman J. Singer,
 
 Sutherland Statutory Construction
 
 § 49.09 (5th ed.1992) (compiling numerous Alabama cases to the same effect). As the Court aptly put it in the early case of
 
 Barnewall v. Murrell,
 
 108 Ala. 366, 377, 18 So. 831, 836 (1895), it is “an elementary rule of statutory construction” that, where a reenacted statute has previously been construed by the courts, it is “presumed the legislature intended the adoption of that construction, or [it] would have varied the words, adapting them to a different intent.” Here, the legislature could have “varied the words” of former § 11-3-6 in an effort to “adapt them to a different intent,” but did not.
 

 In accordance with the previous decision of this Court in
 
 Riley v. Kennedy
 
 and based on well-established principles of statutory construction, we conclude that § ll-3-l(b) requires vacancies on a county commission to be filled by gubernatorial appointment and that the proviso at the outset of that subsection (making an exception for local laws that authorize special elections) does not apply retroactively, that is to local laws that predate the legislature’s adoption of that proviso. Act No. 784, Ala. Acts 1977, is such a local law.
 

 In 2007, the legislature added subsection (f) to § 11-3-1.
 
 See
 
 Act No. 2007-488, Ala. Acts 2007. Section ll-3-l(f) now expressly repeals local laws in conflict with any other provision of § 11-3-1:
 
 *841
 
 “Any existing local law or portion thereof in conflict with this section is specifically repealed to the extent of the conflict effective with the next election following September 1, 2007.” Act No. 784, by purporting to provide for special elections to fill vacancies on the Jefferson County Commission, is “in conflict” with § 11 — 3—1(b), which requires vacancies to be filled by gubernatorial appointment, with no exception for preexisting local laws. Act No. 784, as a preexisting local law, therefore was repealed by the legislature’s adoption of § 11 — 3—1(f). The trial court’s validation of the February 5 special election on the basis that it was authorized by Act No. 784 is due to be reversed.
 
 [11]
 

 IV. The Right to a November 2008 Election
 

 McGinnis argues on appeal that he is entitled to an order requiring the Election Commission to include the county commission seat for district 1 on the November 2008 general election ballot. In support of this view, he cites us to the portion of § 11-3-1 (b) that provides that “[i]f the appointment [by the Governor to fill a vacancy on a county commission] occurs at least 30 days before the closing of party qualifying as provided in Section 17-13-5,” a condition that exists in this case, “the person appointed to the vacated office shall only serve until seven days after the next general election following the appointment .... ” We also observe that the penultimate sentence of § 11 — 3— 1(b) includes a reference to “the election required by operation of this subsection.” Given our ruling today as to the repeal of Act No. 784, McGinnis’s understanding of § 11-3-1 (b) as it relates to the conduct of an election to fill the vacancy in the Jefferson County Commission is correct.
 
 [12]
 
 McGinnis seeks a judgment requiring that the election prescribed by § 11-3-1 (b) be placed on the November 2008 general election ballot and “such additional orders as may be needed to secure full and appropriate relief consistent with the right of political parties to nominate candidates” for that election. The trial court is instructed to enter an appropriate order declaring that the required election is to be placed on the November 2008 general election ballot. As for the remainder of the relief requested by the appellants, this Court is confident that appropriate officials will take the necessary and appropriate steps as may be called for or allowed in any applicable provisions of Title 17, Ala.Code 1975, and any other applicable law, whether relating to the selection by political parties of nominees or any other aspect of the election process. Nothing herein shall prevent the parties from petitioning the trial court for such further relief as may be necessary and appropriate to fulfill the intent of this Court’s judgment.
 

 V. Conclusion
 

 For the reasons discussed, the judgment of the trial court upholding the validity of the February 5 special election on the basis of its conclusion that Act No. 784 authorized that election was in error. The
 
 *842
 
 Governor’s appointment of George F. Bowman to fill the vacant district 1 seat on the Jefferson County Commission was in accordance with § 11-3-1 (b) and was lawful. An election for that seat is to be held as part of the November 2008 general election. Accordingly, we reverse the trial court’s judgment and remand the cause before us to the trial court for the entry of a judgment consistent with this opinion.
 

 1070850 — REVERSED AND REMANDED.
 

 1070893 — REVERSED AND REMANDED.
 

 1070917 — REVERSED AND REMANDED.
 

 COBB, C.J., and SEE, LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
 

 [1]
 

 . The Alabama Legislature enacted Act No. 784 effective May 25, 1977, as a local law that purported to authorize a special election to fill a vacancy on the Jefferson County Commission caused by "death, resignation, impeachment, or any cause except normal expiration of terms.” § 1, Act No. 784.
 

 [2]
 

 . Section 11-3-1 (b) now provides:
 

 "Unless a local law authorizes a special election,
 
 any vacancy on the county commission shall be filled by appointment by the Governor. If the appointment occurs at least 30 days before the closing of party qualifying as provided in Section 17-13-5, the person appointed to the vacated office shall only serve until seven days after the next general election following the appointment as provided herein. The person so appointed to fill the vacancy shall meet the residency requirements in subsection (a), and shall hold office from the date of appointment until the eighth day following the next general election. If the original term in which the vacancy occurred would not have expired on the eighth day following the next general election after the appointment, the person elected at the election required by operation of this subsection shall serve for a period of time equal to the remainder of the term in which the vacancy was created. Thereafter, election for the county commission seat shall be as otherwise provided by law.”
 

 The emphasized language, however, was first included in this statutory scheme effective in 2004.
 
 See
 
 Act No. 2004-455, Ala. Acts 2004. The substance of the first sentence, without the emphasized language, was part of the Alabama Code prior to the enactment of Act No. 784 in 1977. Until September 1, 2007, it was codified as § 11-3-6, Ala.Code 1975. Effective September 1, 2007, the entire provision, including the emphasized language and additional language, was renumbered by Act No. 2007-488 as § 11-3-1 (b).
 

 [3]
 

 .Section 105 provides:
 

 "No special, private, or local law, except a law fixing the time of holding courts, shall be enacted in any case which is provided for by a general law, or when the relief sought can be given by any court of this state; and the courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court; nor shall the legislature indirectly enact any such special, private, or local law by the partial repeal of a general law.”
 

 [4]
 

 . Plump, a resident of district 1, is a plaintiff in a federal action challenging Governor Riley’s appointment of Bowman to fill the district 1 vacancy on the Jefferson County Commission; that action is based on § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c and is presently pending review by the United States Supreme Court.
 

 [5]
 

 . They also note that, as residents of Jefferson County, they will be governed by the winner of the election in his capacity as a member of the Jefferson County Commission. In addition, McGinnis notes his status as a voter in district 1 and, further, seeks the right to participate in the election of a county commissioner that, he asserts, should be scheduled for November 2008 in keeping with § 11 — 3— 1(b), Ala.Code 1975.
 

 [6]
 

 . In their motion to dismiss, the Election Commission and Sheriff Hale also argued,
 
 *832
 
 and the trial court subsequently found, that because plaintiffs Working and Erdemir did not have standing, the court lacked subject-matter jurisdiction over the case as originally filed, and therefore the amendment by which McGinnis joined the action as a plaintiff "cannot relate back to the filing of the original complaint, because there is nothing ‘back’ to which to relate.” Because of our disposition of the issue of the Working plaintiffs’ standing as taxpayers, we need not address the issue whether McGinnis’s joinder of the complaint related back to the date of the filing of the original complaint or, if it did not, whether the trial court nonetheless acquired subject-matter jurisdiction over McGinnis’s claims as of the date they were filed.
 

 [7]
 

 . The common-law "demurrer” has been succeeded by a motion filed pursuant to Rule 12(b)(6) seeking dismissal of a complaint on the ground that it fails to state a claim upon which relief may be granted.
 
 See Roberts v. Meeks,
 
 397 So.2d 111, 114 (Ala.1981).
 

 [8]
 

 . Our view of the standing issue in the present case finds further support in the fact that § 105 affirmatively directs the judicial branch to decide disputes under that provision: ''[T]he courts, and not the legislature, shall judge as to whether the matter of said law is provided for by a general law, and as to whether the relief sought can be given by any court .... ” The doctrine of standing is rooted in concerns that courts not exceed their proper scope of authority by intruding into matters more properly decided by another branch of government or by citizens as part of the political process. "The power of the judiciary ... is 'the power to [decide] ... a particular
 
 case or controversy.'
 
 ”
 
 City of Daphne v. City of Spanish Fort,
 
 853 So.2d 933, 942 (Ala.2003) (quoting
 
 Ex parte Jenkins,
 
 723 So.2d 649, 656 (Ala.1998)) (emphasis added). In
 
 Allen v. Wright,
 
 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), the United States Supreme Court explained that "the several doctrines that have grown up to elaborate” the "case or controversy” requirement, including that of standing,
 

 "are 'founded in concern about the proper — and properly limited — role of the courts in a democratic society’
 
 Warth v. Seldin,
 
 422 U.S. 490, 498 ... (1975).
 

 " ‘All of the doctrines that cluster about Article III — not only standing but mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our kind of government.’
 
 Vander Jagt v. O’Neill,
 
 226 U.S.App. D.C. 14, 26-27, 699 F.2d 1166, 1178-1179 (1983) (Bork, J., concurring).”
 

 468 U.S. at 750. The Supreme Court further explained that the standing inquiry turns on whether "adjudication is ‘consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process,'
 
 Flast v. Cohen,
 
 392 U.S. 83, 97 ... (1968).” 468 U.S. at 752. The concerns expressed in
 
 Flast v. Cohen
 
 as to whether a court’s resolution of a dispute would be "consistent with a system of separated powers” and whether “the dispute is one traditionally thought to be capable of resolution through the judicial process” are ameliorated in this case by the constitutional directive in § 105 for courts to decide disputes arising under that provision.
 

 [9]
 

 . At least in regard to the payment of election expenses, the legislature has indicated that a presidential-preference primary is to be treated as if it were an election in which “candidates for federal or state offices are nominated or federal or state offices are elected.” See § 17-13-100(d) (providing that the State of Alabama’s obligation to reimburse a county for sums expended in holding and conducting a presidential-preference primary shall be “as provided in Section 17-16-4”).
 

 [10]
 

 . Section 17-16-3 begins with the caveat “[ejxcept as provided in Section 17-8-12.” Section 17-8-12, entitled "Compensation of election officials,” provides:
 

 "(a) The inspector and clerks shall each be entitled to base compensation of fifty dollars ($50).
 
 The compensation of the election officials shall be paid as preferred claims, out of moneys in the county treasury not appropriated, on proper proof of service rendered.
 
 In all counties in which the compensation of election officials is prescribed by local law or general law of local application at an amount in excess of the amount prescribed, the compensation of the election officials shall not be decreased under this section and the county commission may increase the compensation so prescribed. In those counties in which compensation of election officials is set at an amount in excess of five dollars ($5) per day, but less than fifty dollars ($50) per day, the provision of the local law or general law of local application relative thereto is superseded and the compensation prescribed herein shall be the total compensation of election officials in the counties.
 

 
 *836
 
 "(b) In addition to the compensation provided in subsection (a),
 
 each clerk shall he entitled to supplemental compensation paid by the state
 
 to ensure that the total compensation paid to each shall be in an amount of at least seventy-five dollars ($75) per day, and each inspector shall be entitled to
 
 supplemental compensation paid by the state
 
 in an amount that ensures that the total compensation of an inspector is at least one hundred dollars ($100) per day. Upon completion of a local election school or being certified as a qualified poll worker by the probate judge, or both, each clerk and inspector shall be entitled to receive an additional twenty-five dollars ($25) per day in compensation from the state. The increase provided for in this subsection shall not increase or decrease any salary supplement paid under a local law which is in effect on October 1, 2005.
 
 The provisions of this subsection shall only apply to those statewide elections for which county expenses are reimbursed by the state as defined in Chapter 16.
 
 The provisions of this subsection shall not apply to special county or other elections held at any time other than at the time of holding statewide elections."
 

 (Emphasis added.)
 

 [11]
 

 . The Working plaintiffs also contend that Act No. 784 violates their equal-protection rights and that, even if Act No. 784 governed, the Election Commission set the special election on the wrong day. As is true of the issue of the constitutionality of Act No. 784 in relation to § 105 of the Alabama Constitution, our holding today makes it unnecessary for us to reach these additional issues.
 

 [12]
 

 . The opposition of the Election Commission to placing the county commission seat on the November ballot has been premised on its view that Act No. 784 supersedes the provisions of the general law in this regard.